**Martha Katherine HUTCHESON,
Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–94–0285–CR.**

Court of Appeals of Texas,
Amarillo.

May 15, 1995.

Law Offices of Benjamin F. Walker, Benjamin F. Walker, San Antonio, for appellant.

Randall County Criminal Dist. Atty., James Farren, Roger Wineinger, Amarillo, for appellee.

Before DODSON, BOYD and QUINN, JJ.

QUINN, Justice.

The Appellant, Martha Katherine Hutcheson, convicted of murder with a deadly weapon, asks the court whether the evidence sufficiently supports her conviction and whether the trial court erred in failing to instruct the jury on self-defense and apply the law of concurrent causation to the facts at issue. We answer yes to the first question, no to the others, and affirm the judgment.

## FACTS

Appellant was accused of shooting and murdering Jim Hutcheson, her estranged husband. At trial, the evidence revealed that on August 16, 1993, she ventured, in an intoxicated state, to her husband's apartment pursuant to his request. Knowing that he experienced mood changes, she took a .357

revolver with her. Upon her arrival, she entered the abode and began conversing with Jim. The two began discussing the possibility of reconciliation. When Appellant informed him that it was not feasible, an argument ensued during which allusion was made to his "affair" with Appellant's sister. Jim expressed his desire that she forget about the incident. Next, he left the room only to return with a shotgun.

Jim pointed the firearm at his wife's head and allegedly uttered that "if he couldn't have ... [Appellant] nobody else would." He eventually lowered it and ultimately laid it against the sofa. Discussion about reconciliation having resurrected, verbal hostilities continued. Soon, Jim again left the room. Appellant took advantage of his second absence to move the shotgun away from the sofa and next to the door. Rather than exit the dwelling through that very same door, however, she "ran" back to her seat. Why she did not leave she did not know, though she admitted her escape was quite feasible.

Incidentally, the shotgun by the door and the .357 revolver on her person were not the only weapons located within the room. A 9mm pistol laid atop a nearby coffee table. Unlike the shotgun, however, Appellant made no effort to move it.

Jim re-entered and the two resumed their argument. Next, he began walking towards the new location of the shotgun. At this time, Appellant purportedly noticed that the 9mm was gone. Though she did not see it on him, she was unaware of whether Jim had it. "Mad," "angry," and "scared," she pulled the .357 from her purse and "started shooting at the wall" to "scare him." Jim stopped then renewed his journey towards the shotgun and door. Another shot rang out as Appellant aimed for the "door facing." Had she wanted to hit him, she commented, she could have easily done so; yet, her avowed intent was to scare, not kill.

Though Jim approached the awaiting gun, he did not pick it up. Instead, he attempted to exit through the door. By that time, policemen had been dispatched to the scene. Several heard a shot and saw debris fly from the apartment door immediately before Jim appeared. They also heard him exclaim "I'm getting out of here." One officer yelled, "Get down." As Jim turned towards that officer, Appellant approached and fired again. Her bullet entered above Jim's left shoulder blade and exited near his left collar bone, leaving extensive damage. Upon hearing this shot, another police officer on the scene thought that his colleague was under attack. He thus responded by discharging his weapon once in the direction of Jim. That bullet entered below Jim's rib cage, lodged near his spine, and also inflicted extensive damage. According to the testifying pathologist, either wound sufficed to cause death.

## POINT OF ERROR ONE

Appellant, complaining of the sufficiency of the evidence, argues that the State did not prove she caused her husband's death. Since either bullet could have killed him, she posits, the proof did not show that her bullet caused his death. We disagree and overrule point one.

 At bar, sufficient evidence of causation existed if the State proved either that Appellant's conduct alone was enough to kill Jim *or* that it coupled with that of the police officer sufficed to cause death. *Mendoza v. State*, 840 S.W.2d 697, 699 (Tex.App.—Corpus Christi 1992, no pet.); *Robbins v. State*, 717 S.W.2d 348, 351 (Tex.Crim.App.1986). Because the pathologist testified that the wound inflicted by Appellant was enough to cause death, the State met its burden. Sufficient evidence of "but for" causation appeared of record.

## POINTS OF ERROR TWO AND THREE

██ Next, the Appellant objects to the trial court's refusal to instruct the jury on self-defense. The court's refusal, however, was not error, and we, therefore, overrule points two and three.

First, when given the opportunity to object, Appellant simply stated that

Although I don't think we're probably entitled to a charge on self-defense, I'm going to ask for it and request it in case some lawyer at another time on appeal decides that perhaps I was incorrect, so I'll make that request.

This comment is similar to that uttered in *Reece v. State*, 683 S.W.2d 873 (Tex.App.—Houston [14th Dist.] 1984, no pet.), wherein the accused merely stated that he "would like to have the charge of self-defense, standard form." *Id.* at 874–75. Neither remark specified the particular instruction desired. Because that omission rendered the objection inadequate to preserve error in *Reece,* so too does it here.

■ Second, and assuming that error was preserved, Appellant failed to present any evidence on an element of her claim. The particular element is that mandated by § 9.32(2) of the Texas Penal Code, *i.e.,* that a reasonable person in her situation would not have retreated. *Tex. Penal Code Ann.* § 9.32(2) (Vernon 1994). When her counsel broached the topic, she answered that she did not know why she did not leave once Jim walked from the room. She further stated that she had ample opportunity to do so: "I'm sure that if I could have ... got the shotgun over that fair [sic], I'm sure I could have [left]." Given the absence of all evidence suggesting that a reasonable person would not have retreated, the court was without obligation to instruct the jury on self defense. *Reece v. State, supra* (holding that the defendant was not entitled to an instruction because he presented no evidence that his actions were immediately necessary to survival).

■ Third, any purported error was rendered harmless by Appellant's own testimony. When asked, while on the witness stand, whether she understood that "what you've told the jury today does probably not constitute self-defense under Texas law," she responded, "Yes sir." We cannot fault the trial court for withholding an instruction that the Appellant herself, *and in the presence of her fact finders,* deemed specious.

## POINTS OF ERROR FOUR AND FIVE

Next, Appellant argues that the trial court erred in neglecting to include within its jury charge an application of the law on "concurrent causation" to the facts of the case.

Though she did not explain what particular aspect of "concurrent causation" needed application, it was no doubt that which would have permitted the jurors to acquit if they found the officer's gunshot sufficient to cause death and Appellant's insufficient.[1] Disagreeing with her, we overrule points four and five.

■ As noted in the authority relied upon by Appellant, an accused is entitled to a charge on every defensive issue "raised by the evidence, regardless of whether it is strong, feeble, unimpeached or contradicted." *Nugent v. State,* 749 S.W.2d 595, 598 (Tex. App.—Corpus Christi 1988, no pet.). Conversely, he is not entitled to an instruction which is not raised by the evidence. Thus, to be entitled to a charge on "concurrent causation" at bar, the record had to hold some semblance of evidence that "the concurrent cause was clearly sufficient to produce the result *and* the conduct of ... [Appellant] clearly *insufficient.*" *Tex.Penal Code* § 6.04(a) (emphasis added). Though evidence of the former was present, nowhere does it contain evidence of the latter. Indeed, the only comments touching the point were made by the pathologist who testified that both wounds sufficed to cause the death. Thus, until either party tendered evidence suggesting that Appellant's bullet was "clearly insufficient" to produce the ultimate result, no instruction on concurrent causation was warranted. *See Fisher v. State,* 493 S.W.2d 841, 843 (Tex.Crim.App.1973) (holding that a court need not charge on an issue which the evidence neglects to raise).

Appellant would belittle this outcome because the court incorporated into its charge the statement that

> A person is criminally responsible if the result would not have occurred but for her conduct, either alone or concurrently with another cause.

Having done so, she continues, it was bound to apply the law to the facts. This contention lacks substance for several reasons.

---

1. That would seem to be the only application beneficial to her. Indeed, telling the jurors that they could convict if they found that both upper cavity wounds sufficed to cause death would only help the State.

43

■ First, and contrary to her suppositions, *Robbins v. State* does not hold that an abstract proposition of law, lacking all evidentiary support yet mistakenly included in the charge, must be followed by an application of the proposition to the pending case. There, both parties did admit that the matter of concurrent causation should not have been included in the charge. Nevertheless, the court included it and an accompanying application paragraph. Yet, the resulting charge was wrong since it permitted the jury to convict Robbins on a lesser burden of proof than that mandated by the law. *Robbins v. State*, 717 S.W.2d at 350–51. Given that the defendant was convicted and that the conviction could have been affected by the misstatement of law, the court acted to correct the situation. Yet, nowhere did it address the scenario presented at bar. Robbins never contended that the court simply charged on an abstract legal point without an attendant application paragraph. Nowhere did the court suggest, much less hold, that Robbins was entitled to an application paragraph explaining a legal theory which should never had been submitted. What it held, in effect, is that if an irrelevant statement of law and an application thereof to the pending case is made, it better be correct.

Thus, Appellant cannot reasonably cite *Robbins* as support for her position. This is especially so where she never claimed, unlike Robbins, that the charge submitted contained an inaccurate legal proposition which likely induced a wrong result. Furthermore, save for her conclusory statement that the charge as submitted was "incomplete, inherently confusing and misleading and harmful" she neglected, unlike Robbins, to explain how the alleged mistake contributed to her conviction. Faced with the utter lack of evidence warranting a concurrent cause instruction and the weighty evidence that she did in fact cause Jim's death, we find no reversible error. *Tex.R.App.P.* 81(b)(2).

Second, adopting Appellant's argument would constitute a directive to trial judges to stress issues mistakenly interjected and to compound possible error. *See Sanders v. State*, 814 S.W.2d 784, 787 (Tex.App.—Houston [1st Dist.] 1991, no pet.) (stating that a

court commits error when it charges a jury on a theory not supported by the evidence). Such directives impugn common and judicial sense.

For the reasons stated above, the judgment and sentence of the trial court is affirmed.