02-11-479-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00479-CR

 

 


 
 
 James
 Howard Adams II
  
  
  
 v.
  
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From Criminal District
 Court No. 4
  
 of
 Tarrant County (1183507D)
  
 February
 14, 2013
  
 Opinion
 by Justice Walker
  
 (nfp)
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed. 

 

SECOND DISTRICT COURT OF APPEALS 

 

 

 

 

By_________________________________

   
Justice Sue Walker

 

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00479-CR

 

 


 
 
 James Howard Adams II
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM Criminal
District Court No. 4 OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.     Introduction

Appellant
James Howard Adams II appeals his conviction for the murder of Corley McKelroy.
 In two issues, Adams contends that the evidence is insufficient to support his
conviction.  We will affirm.

II.   Factual and Procedural Background

Richard
Anderson frequently traveled to Mexico to buy pills without a prescription.  On
one trip, he took Adams and Nick Panzera, and the three purchased Valium,
Xanax, and Rohypnol.  Upon their return to Fort Worth, they went to a warehouse
occupied by McKelroy as a residence.  Anderson told Adams and Panzera that he
was going to purchase more drugs from McKelroy.

Anderson
went inside, and the other two men waited outside.  During the drug
transaction, Anderson used his .380 caliber pistol to shoot McKelroy multiple
times in his chest, back, and right arm.  Adams and Panzera heard gunshots and
ran into the warehouse.  Anderson then ordered Adams to shoot McKelroy.  At Adams’s
trial, Anderson testified that the purpose of his instruction was to form a pact
with Adams and Panzera because Anderson thought that “if everybody shot [McKelroy]
then nobody could tell.”  Panzera testified that Anderson’s instruction served
to make sure that McKelroy was in fact dead.  Adams testified that Anderson simply
demanded that Adams “put one in [McKelroy].”  While the testimony from the
three men varied as to Anderson’s precise instruction, each testified that
Adams used a shotgun to fire a single gunshot into McKelroy’s head. 

The
shot from Adams’s gun was so loud that the men thought someone might have heard
it, and they left immediately.[2]  Anderson drove
McKelroy’s car, and Adams and Panzera followed in their vehicle.  They drove to
a lake, set McKelroy’s car on fire, and then drove to a nightclub in their
vehicle.

Adams
was charged with first degree murder.  The jury convicted him and assessed his
punishment at thirty years’ confinement.  The trial court sentenced
him accordingly.

III. 
 Sufficiency
of the
Evidence

 

In two issues, Adams argues that the evidence is insufficient
to prove (1) that McKelroy was alive when Adams fired the gun and (2) that Anderson,
rather than Adams, murdered McKelroy.

A.  Standard
of Review

In our
due-process review of the sufficiency of the evidence to support a conviction,
we view all of the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Wise v. State, 364
S.W.3d 900, 903 (Tex. Crim. App. 2012).

This
standard gives full play to the responsibility of the trier of fact to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.  Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; Blackman v. State, 350 S.W.3d 588, 595
(Tex. Crim. App. 2011).

The
trier of fact is the sole judge of the weight and credibility of the evidence. 
See Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); Wise, 364
S.W.3d at 903.  Thus, when performing an evidentiary sufficiency review, we may
not re-evaluate the weight and credibility of the evidence and substitute our
judgment for that of the factfinder.  Isassi v. State, 330 S.W.3d 633,
638 (Tex. Crim. App. 2010).  Instead, we determine whether the necessary
inferences are reasonable based upon the cumulative force of the evidence when
viewed in the light most favorable to the verdict.  Sorrells v. State,
343 S.W.3d 152, 155 (Tex. Crim. App. 2011).  We must presume that the
factfinder resolved any conflicting inferences in favor of the verdict and
defer to that resolution.  Jackson, 443 U.S. at 326, 99 S. Ct. at
2793; Wise, 364 S.W.3d at 903.

B.  Sufficiency of
Evidence to Show that

McKelroy was Alive When
Adams Fired His Gun

 

In
his first issue, Adams argues that the evidence is insufficient to show that
McKelroy was alive when Adams fired his gun because the evidence at trial
showed that the first gunshots fired by Anderson killed McKelroy.

A
person commits murder if he (1) intentionally or knowingly causes the death of
an individual or (2) intends to cause serious bodily injury and commits an act
clearly dangerous to human life that causes the death of an individual.  Tex.
Penal Code Ann. § 19.02(b)(1)–(2) (West 2011).  “Individual” means a human
being who is alive.  Id. § 1.07(a)(26) (West Supp. 2012).  “Death”
occurs when, according to ordinary standards of medical practice, there is
irreversible cessation of the person’s spontaneous respiratory and circulatory
functions.  Tex. Health & Safety Code Ann. § 671.001(a) (West 2010); see
also Grotti v. State, 273 S.W.3d 273, 282 (Tex. Crim. App. 2008)
(explaining that the health and safety code definition of “death” is
appropriate in reviewing the sufficiency of the evidence using hypothetically
correct jury instructions).  

At Adams’s
trial, the jury heard expert testimony from two medical examiners who both opined
that McKelroy was alive when Adams fired his gun.  The State first called Dr.
Stephen Putthoff.  Dr. Putthoff was a deputy medical examiner with the Tarrant
County Medical Examiner’s Office when McKelroy was killed.  He performed the
autopsy on McKelroy.  According to Dr. Putthoff, the gunshots from Anderson’s pistol
were lethal, meaning that McKelroy would have eventually died because of them.  Dr.
Putthoff did testify, however, that McKelroy was alive before receiving the
single gunshot to his head.  Dr. Putthoff explained that the gunshots fired by
Anderson

eventually would have
been fatal because [McKelroy] was bleeding into both lungs and the center
compartment of the chest . . . .  He would have eventually gone into shock.  I
mean, terminal shock.  But what I found in doing the autopsy was that he had
lived long enough to go into blood loss shock . . . .  So those
initial shots did not kill him.

 

The shunning
phenomenon known as shock occurs quite quickly, less than a minute or so.  But
it does show there was an interval of time between those large caliber handgun
bullets and the head shot.  

 

Dr.
Putthoff further testified that McKelroy’s kidneys demonstrated signs that he
was not dead but was “shunning” due to the blood loss shock.  Dr. Putthoff explained:

The kidneys are one
of the first organs to show the shunning phenomenon.  What the body is
essentially trying to do is deal with all this blood loss and keep what the
body considers the most important organs alive. . . .  Well, the kidneys are
evolutionary and by choice of the body evidently expendable.  So they start—the
kidneys show first evidence of that shunning phenomenon because the outer layer
of the kidney . . . becomes very pale.  The blood is actually being diverted
from the kidneys. 

 

Based
on the autopsy results, Dr. Putthoff concluded that McKelroy’s heart was still
beating when Adams fired his gun.

The
State also called Dr. Nizam Peerwani, Chief Medical Examiner of Tarrant County.
 Like Dr. Putthoff, Dr. Peerwani testified that in his opinion, McKelroy was
alive when Adams fired the gun into McKelroy’s head.  Dr. Peerwani based his
opinion on photographs taken at the crime scene and during the autopsy—both of
which displayed that McKelroy had hemorrhaging in the orbits of his eye
sockets.  Dr. Peerwani explained the significance of this hemorrhaging:

These are—are usually
called raccoon eyes, and they usually are seen in a person who has been shot in
the head.  But to have those raccoon eyes or hemorrhage around the orbits of
eye sockets, one has to have a beating heart.  You can’t have that in a—in a
dead person.

 

. . . .  For black
eyes to occur you [need] to have a beating heart.  So whether he was alive for
a short while or he lingered on, the point of—the fact of the matter is that
his heart was still beating when he sustained the gunshot wound.  

 

Dr.
Peerwani testified to his belief that McKelroy’s heart was still pumping when Adams
shot McKelroy; as such, McKelroy had not yet experienced an irreversible
cessation of his circulatory functions when Adams shot McKelroy.  See Tex.
Health & Safety Code Ann. § 671.001(a).

Counsel
for Adams asked both Dr. Putthoff and Dr. Peerwani on cross-examination whether
an alternative means, such as a blow to the face occurring before the shooting,
could have caused the hemorrhaging around McKelroy’s eyes.  Dr. Putthoff
responded that his analysis uncovered no evidence of the kind of soft tissue
injuries that would result from a pre-gunshot blow to the skin; rather, the
hemorrhaging was consistent with a gunshot wound.  Dr. Peerwani also explained that
McKelroy’s hemorrhaging was inconsistent with a pre-gunshot facial blow: 
“Generally speaking, when you have a black eye, there’s also hemorrhage in the
conjunctiv[ae] of the eyelids inside, and there is hemorrhage in the—in the
covering of the eyeballs, which is the orbital conjunctiv[a].  [McKelroy] had
none of those things present.”  Dr. Peerwani said that a pre-gunshot blow could
possibly cause the hemorrhaging around McKelroy’s eyes but was improbable here
when considered in connection with the amount of hemorrhaging in McKelroy’s
brain:

There was a lot of
bleeding in the brain.  A person whose heart does not beat does not bleed so
profusely.  Like I said a little while back, we remove the brain from the skull
in a postmortem exercise, and there’s nothing more traumatic than taking a
brain out.  There isn’t such blood that you see throughout the brain because of
the process.  You [have] to have a beating heart to have this enormous amount
of hemorrhage that you see in this case.

 

Despite
the above testimony, Adams argues that the overwhelming evidence shows that
McKelroy was dead when he received the gunshot to the head.  In support of his
claim, Adams points to the eyewitness testimony of Anderson and Panzera and the
expert testimony of Dr. Charles Harvey, who all testified that McKelroy was
dead when Adams fired his gun.   

But
the jury, as factfinder, has the responsibility of judging the credibility of
witnesses and assigning weight to the evidence.  See Tex. Code Crim.
Proc. Ann. art. 38.04; Wise, 364 S.W.3d at 903.  In the present case, after
judging the credibility of the witnesses and assigning weight to the evidence,
the jury favored the testimony of Dr. Putthoff and Dr. Peerwani over the
evidence put on by Adams, and the jury concluded that McKelroy was alive when
Adams fired his gun.  Viewing the evidence in the light most favorable to that
verdict, we conclude that a rational jury could have found beyond a reasonable
doubt that McKelroy was alive when Adams fired his gun.  See Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Isassi, 330 S.W.3d at 638; Matson
v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).  We overrule Adams’s
first issue.    

C.  Sufficiency of
Evidence to Show that 

Adams’s Gunshot was a
“But For” Cause of McKelroy’s death

 

In
his second issue, Adams argues that the evidence is insufficient to show that he
murdered McKelroy because the evidence shows that Anderson alone is responsible
for McKelroy’s death, thus excusing Adams from culpability.  

A
person is criminally responsible for murder if the result would not have
occurred but for his conduct, operating either alone or concurrently with
another cause, unless the concurrent cause was clearly sufficient to produce
the result and the conduct of the actor was clearly insufficient.  Tex. Penal
Code Ann. § 6.04(a) (West 2011).  The Texas Court of Criminal Appeals has
interpreted section 6.04(a) to mean that

a “but for” causal
connection must be established between the defendant’s conduct and the
resulting harm.  If concurrent causes are present, two possible combinations
exist to satisfy the “but for” requirement: (1) the defendant’s conduct may be
sufficient by itself to have caused the harm, regardless of the existence of a
concurrent cause; or (2) the defendant’s conduct and the other cause together
may be sufficient to have caused the harm.  However, [section] 6.04(a) further
defines and limits the “but for” causality for concurrent causes by the last
phrase, “unless the concurrent cause was clearly sufficient to produce the
result and the conduct of the actor clearly insufficient.”  If the additional
cause, other than the defendant’s conduct, is clearly sufficient, by itself, to
produce the result and the defendant’s conduct, by itself, is clearly
insufficient, then the defendant cannot be convicted.

 

Robbins v. State,
717 S.W.2d 348, 351 (Tex. Crim. App. 1986).

In
the present case, sufficient evidence supports a jury determination that McKelroy’s
death would not have occurred but for Adams’s actions.  Dr. Putthoff testified
that the gunshot to McKelroy’s head left an entry wound of 3.5 by 2.5 inches,
which Dr. Putthoff described as a “huge” wound, and an exit wound of 5 by 4
inches.  Additionally, Dr. Putthoff testified that the gunshot to McKelroy’s
head caused two-thirds of his brain to be blown out.  Dr. Peerwani, on
cross-examination, explained that Anderson’s gunshots were indeed lethal but
the final gunshot to the head was fatal—the shot that caused McKelroy’s death. 


In
support of his argument that the evidence is not sufficient, Adams relies on
two cases: Wright v. State, 388 S.W.2d 703, 706 (Tex. Crim. App. 1965),
and Hutcheson v. State, 899 S.W.2d 39, 41 (Tex. App.—Amarillo 1995, pet.
ref’d). These cases, however, offer little to support Adams’s argument that
because Anderson may be culpable of McKelroy’s death, Adams is thereby relieved
of culpability.  The cases cited address only the culpability of the initial
actor and offer nothing to remove criminal responsibility from the secondary
actor.  See Wright, 388 S.W.2d at 706; Hutcheson, 899
S.W.2d at 41.  In Wright, the court of criminal appeals actually stated
that when a criminal defendant “contributed to the death of the deceased he is
responsible though there were other concurring causes.”  Wright, 388
S.W.2d at 706; accord Robbins, 717 S.W.2d at 351 (interpreting Texas
Penal Code section 6.04).  Thus, so long as Adams’s gunshot was itself
sufficient to cause McKelroy’s death, the fact that Anderson’s gunshots may
have also been sufficient to cause the death is wholly irrelevant.[3] 
See Wright, 388 S.W.2d at 706.

Viewing
the evidence in the light most favorable to that verdict, we conclude that a
rational jury could have found beyond a reasonable doubt that Adams’s act was a
“but for” cause of McKelroy’s death.  See Jackson, 443 U.S. at 326, 99
S. Ct. at 2793; Isassi, 330 S.W.3d at 638; Matson, 819
S.W.2d at 846.  We overrule Adams’s second issue.    

IV. Conclusion

Having
overruled Adams’s two issues, we affirm the trial court’s judgment.

 

 

SUE WALKER
JUSTICE

 

PANEL: 
WALKER, MCCOY, and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  February 14,
2013









[1]See Tex. R. App. P. 47.4.





[2]Anderson testified that
because the gunshot was so loud, he decided to forgo Panzera’s turn to shoot
McKelroy and complete the pact.





[3]Adams also argues that
because Anderson directed him to shoot McKelroy, the culpability should be on
Anderson alone.  Adams cites no authority for this proposition.  Even if he had
raised the affirmative defense of duress at trial, we find no support in the
record for it.  See Tex. Penal Code Ann. § 8.05 (West 2011) (setting
forth elements of duress).