

# NUMBER 13-12-00657-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**DAVID SCOTT RUCKER JR.,**                                       **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                           **Appellee.**

### On appeal from the 371st District Court
### of Tarrant County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Justice Rodriguez

A jury found appellant David Scott Rucker Jr. guilty of aggravated sexual assault of K.J., a child. See TEX. PENAL CODE ANN. § 22.021 (West Supp. 2011). After a punishment hearing, the jury found that the child was younger than six years of age and assessed punishment at twenty-five years' confinement in the Institutional Division of the

Texas Department of Criminal Justice. By two issues, Rucker contends that, during the guilt/innocence phase, the trial court erred by: (1) failing to include a jury charge instruction on the defensive theory of medical care; and (2) admitting evidence of extraneous offenses over his objection. We affirm.[1]

## I. CHARGE ERROR

In his first issue, Rucker contends that the trial court erred when it refused to include an instruction on the defensive theory of medical care in the guilt/innocence jury charge.[2] He argues that the evidence supported a medical-care defense instruction and that he suffered some harm by the trial court's erroneous denial of his request. Rucker claims that there is ample testimony that he believed his conduct was medically necessary to relieve K.J.'s constipation. We disagree.

### A. Applicable Law and Standard of Review

Article 36.14 of the Texas Code of Criminal Procedure provides that the trial court is to deliver "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). It is a defense to a prosecution for the offense of aggravated sexual assault of a child "that the conduct consisted of medical care for the child and did not include any contact between the anus or sexual organ of the child and the mouth, anus, or sexual organ of the actor or a third party." TEX. PENAL CODE ANN. § 22.021(d) (West Supp. 2011); *see id.* § 22.011(d) (West 2011). "The issue

---

[1] This case is before the Court on transfer from the Second Court of Appeals in Fort Worth pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

[2] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense." *Id.* § 2.03(c) (West 2011). When evidence from any source raises a defensive issue, whether that evidence is weak or strong, unimpeached or contradicted, and the defendant properly requests a jury charge on that issue, the trial court must submit that issue to the jury. *Cocke v. State*, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006). "[T]he evidence must be such that it will support a rational jury finding as to each element of the defense." *Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007). If the evidence, when viewed in the light most favorable to the defendant, does not establish the defense, the defendant is not entitled to an instruction on the issue. *See Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001); *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999); *Remsburg v. State,* 219 S.W.3d 541, 545 (Tex. App.—Texarkana 2007, pet. ref'd); *Hutcheson v. State,* 899 S.W.2d 39, 42 (Tex. App.—Amarillo 1995, pet. ref'd).

The medical-care defense is subject to the doctrine of confession and avoidance. *Cornet v. State*, 359 S.W.3d 217, 225 (Tex. Crim. App. 2012). That is, it arises when "a defendant admits allegations but pleads additional facts that deprive the admitted facts of an adverse legal effect." *Id.* at 224. The medical-care defense is not available only to medical professionals but to all persons who can otherwise validly claim it based on their conduct. *Id.* at 221–22.

In analyzing a jury-charge issue, this Court must first determine if error occurred and, if so, whether harm was suffered. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc).

3

## B. Discussion

The trial court admitted Rucker's interviews with the police as State's Exhibits 2 and 3. During the interviews, Rucker informed the investigator that while he and his wife were caring for eighteen-month-old K.J., he took K.J. upstairs for a nap. According to Rucker, K.J. was constipated, and he inserted his finger into her rectum to help her have a bowel movement. This was something a pediatrician had instructed him to do as an acceptable way to relieve constipation. Rucker admitted that he was not looking as he was doing this and that he simply moved K.J.'s diaper to the side. Rucker explained that later that day he saw blood in K.J.'s diaper and realized he had inserted his finger into her vagina instead of her rectum.

At the close of evidence, the trial court charged the jury with determining whether Rucker was guilty of the offense of aggravated sexual assault of a child by intentionally or knowingly inserting his finger into K.J.'s female sexual organ. The trial court included, in its charge, the following mistake-in-fact instruction:

> It is a defense to prosecution that the actor through mistake formed a reasonable belief about a fact if his mistaken belief negated the kind of culpability required for commission of the offense.

> Now, if you find from the evidence beyond a reasonable doubt that the Defendant, David Scott Rucker, Jr., in Tarrant County, Texas, on or about the 3rd day of February 2011, did then and there cause the penetration of the female sexual organ of [K.J.], a child younger than 14 years of age, by inserting his finger into her female sexual organ, but you further find from the evidence or you have a reasonable doubt thereof that at the time of the conduct, if any, the Defendant, through a mistake, formed a reasonable belief about whether he was penetrating the female sexual organ of [K.J.] with his finger and his mistaken belief negated the required mental state of intentionally or knowingly penetrating the female sexual organ of [K.J.], then you will acquit the Defendant and say by your verdict, "Not guilty."

4

However, the trial court denied Rucker's request for the following medical-care defense instruction:

> It is a defense to prosecution for the offense of aggravated sexual assault of a child that the conduct consists of medical care for the child and does not include any contact between the anus or sexual organ of the child and the mouth to anus or sexual organ of the actor or a third party. Therefore, . . . if there is any evidence . . . raised by the record that Defendant was acting under the reasonable belief that he was providing medical care of [K.J.] on February 3rd, 2011, it is . . . the burden of proof is on the State to disprove that his actions were for the medical care of [K.J.].

Relevant to our analysis, Rucker did not admit the allegations that he *intentionally or knowingly* caused the penetration of the child's female sexual organ by inserting his finger into it, so that the medical-care doctrine applied. *See Cornet*, 359 S.W.3d at 225. Instead, Rucker claimed that he thought he had inserted his finger in K.J.'s rectum in an effort to relieve her constipation. Rucker stated that he did not realize he had penetrated her female sexual organ until hours later when he saw blood in her diaper. Furthermore, even had Rucker admitted that he intentionally or knowingly inserted his finger into the child's female sexual organ, Rucker clearly did not plead additional facts related to medical care that would have deprived such admitted facts of an adverse legal effect. *See id.* at 224.

We cannot conclude that there was evidence from any source that raised a defensive issue, such that the trial court must have submitted the medical-care defense instruction to the jury. *See Cocke*, 201 S.W.3d at 747. Rucker asserted a mistake-of-fact defense, not a medical-care defense. The jury considered the mistake-of-fact defense and rejected it. Because the evidence, when viewed in the light

5

most favorable to Rucker, could not support the medical-care defense, we conclude that Rucker was not entitled to that instruction. *See Ferrel,* 55 S.W.3d at 591. The trial court did not err when it refused to include a medical-care instruction in the charge. *See Ngo*, 175 S.W.3d at 743. We overrule Rucker's first issue.

## II. ADMISSION OF EXTRANEOUS OFFENSE EVIDENCE

By his second issue, Rucker complains that the trial court erred when it allowed evidence of extraneous offenses during the guilt/innocence phase of the trial. The State responds that the trial court did not abuse its discretion in admitting evidence that K.J. had fractured bones, and alternatively, any error should be disregarded because it failed to affect Rucker's substantial rights. We agree with the State.

## A.  Standard of Review and Applicable Law

We review the trial court's determination to admit evidence under an abuse of discretion standard. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g) (en banc).

Article 38.37 of the Texas Code of Criminal Procedure allows for the admission of extraneous acts of a defendant in certain prosecutions, including aggravated sexual assault of a child. It provides:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on *relevant* matters, including:
>
> (1) the state of mind of the defendant and the child; and

6

(2) the previous and subsequent relationship between the defendant and the child.

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2 (West Supp. 2011) (emphasis added).  The State, as the proponent of the extraneous offense evidence, bears the burden of proving the admissibility of the evidence under article 38.37.  *Sanders v. State*, 255 S.W.3d 754, 758 (Tex. App.—Fort Worth 2008, pet. ref'd) (citing *Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996) (op. on reh'g) (en banc)).  Even relevant evidence offered for a permissible purpose may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.  *See* TEX. R. EVID. 403; *Moses*, 105 S.W.3d at 626.

An erroneous admission of evidence of an extraneous offense, however, is nonconstitutional error.  *Johnson v. State*, 84 S.W.3d 726, 729 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd); *Roethel v. State*, 80 S.W.3d 276, 281 (Tex. App.—Austin 2002, no pet.).  And we must disregard the error unless it affects a defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b).  A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict.  *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007); *King v. State***,** 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  Substantial rights are not affected by the erroneous admission of evidence if, after examining the record as a whole, the court has fair assurance that the error did not influence the jury, or had but a slight effect.  *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

Finally, "[i]nstructions to the jury are generally considered sufficient to cure improprieties that occur during trial," and appellate courts "generally presume that a jury

7

will follow the judge's instructions." *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). This presumption can be rebutted, but there must be some evidence to show the jury acted contrary to the jury charge instructions. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (en banc).

## B. Discussion

The trial court admitted evidence that the doctors who examined K.J. three days after the complained-of conduct found that, in addition to her vaginal injury, she had numerous healing bone fractures. A skeletal survey x-ray showed that K.J. had two broken bones in her lower left leg, two in her left forearm, and one in her lower right leg. According to testimony, the fractures were of a type caused by being jerked hard and not from falling.

Jeff Ross, a detective with the Fort Worth Police Department, interviewed Rucker on two occasions following the incident. The trial court admitted the videotapes of the interviews as State's Exhibits 2 and 3.[3] During the interviews, Rucker stated that (1) K.J. is "always" crying and admitted that the crying "wears on him a little bit," (2) K.J. does not like "guys," (3) when he inserted his finger he was "frustrated" and "rough" with K.J., (4) he pushed K.J.'s diaper to the side and was not looking when he inserted his finger, (5) he had "maybe" done it three times, and it always caused K.J. to have a bowel movement, (6) K.J. did not cry "or anything" on this occasion when he inserted his finger and took it right out, although K.J. squirmed and Rucker pulled her foot to get her closer, (7) when he pulled her foot he guessed that the vagina tore, (8) he normally used petroleum jelly, but

---

[3] The first interview lasted approximately forty-five minutes; the second lasted one hour and twenty minutes.

8

did not use lubrication on this occasion because it was not where it was usually located, and (9) he equated what happened to "popping someone's cherry." When Detective Ross asked about K.J.'s broken bones during the first interview, Rucker appeared surprised by this information and denied causing these injuries. Detective Ross and Rucker discussed K.J.'s broken bones in greater detail during the second interview. During that interview, Rucker admitted picking K.J. up by the arm from the couch to put her on his shoulder to take her upstairs for a nap. He also indicated that, "maybe a month and a half ago or so," he squeezed K.J.'s wrists "with all his might." According to Rucker, he was holding K.J. in his lap, and he became frustrated with her continual crying so he squeezed both of her wrists.

Before trial, Rucker objected to evidence regarding the fractures, and the trial court overruled his objections. During trial, when evidence regarding the fractures was admitted and Rucker objected, the trial court again overruled his objections. The court also instructed the jury,

> that if there's any testimony before you in this case regarding the Defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the Defendant committed such other offenses, if any were committed, and even then, you may only consider the same in determining the state of mind of the Defendant and the child and the previous and subsequent relationship between the Defendant and the child.

The trial court included this same instruction in the guilt/innocence charge.

Reviewing the trial court's determination to admit evidence that K.J. was found to have healing fractures, we cannot conclude that the trial court abused its discretion. *See Moses*, 105 S.W.3d at 627. The evidence regarding the fractures was relevant to show

9

Rucker's state of mind when he inserted his finger into K.J.'s vagina and to show his relationship with K.J. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2. Evidence of the other injuries for which the jury could have found Rucker responsible made it more likely that he intended to hurt her by placing his finger in K.J.'s female sexual organ when he became frustrated with her. It also showed that Rucker had enough access to K.J. to cause injuries and that his relationship with her as one of her caretakers was not a caring one. Neither can we conclude that the trial court abused its discretion in determining that the jury could find beyond a reasonable doubt that Rucker was responsible for the fractures. He admitted he might have caused the fractures, and his descriptions of how they might have occurred were consistent with the doctor's description of how that type of fracture occurs. He admitted that he treated K.J. "rough" and that her constant crying "frustrated" him and wore on him. It is not unreasonable for the jury to have inferred that the fractures occurred because of Rucker's actions. The trial court further did not abuse its discretion in finding that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403; *Moses*, 105 S.W.3d at 626. The evidence was compelling in showing the abusive nature of the relationship Rucker had with K.J., despite the fact that he presented a picture of only minimal involvement with K.J. as he watched out for her welfare. We conclude, instead, that the trial court did not abuse its discretion in admitting this evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37; TEX. R. EVID. 403.

Moreover, even had the trial court abused its discretion in admitting evidence of K.J's fractures, we have assurance, reviewing the record as a whole, that error, if any, did

not influence the jury or had but a slight effect.   *See Motilla*, 78 S.W.3d at 355.   Rucker admitted that K.J.'s injuries were caused when he stuck his finger into K.J.'s vagina.   His relationship with K.J. was not a close relationship.   He admitted that he was frustrated and rough with K.J. when he inserted his finger.   He did not look to see where he was inserting his finger, he did not use lubrication, he pulled her by her foot or ankle when she struggled, and he equated what happened to "popping someone's cherry."   In addition, the trial court's instructions to the jury were sufficient to cure any improprieties that occurred.   *See Gamboa*, 296 S.W.3d at 580.   There is no evidence that the jurors failed to follow the trial court's instructions given when the evidence was admitted and its written instructions in the jury charge, so we must presume that they did.   *See id.*; *Colburn*, 966 S.W.2d at 520.   Therefore, we conclude that even if the trial court erred by admitting the evidence regarding the fractures, any error failed to affect Rucker's substantial rights and should be disregarded.   *See* TEX. R. APP. P. 44.2(b).

We overrule Rucker's second issue.

## III.  CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 19th
day of December, 2013.

11