

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00025-CR

---

**DAVID BYRNE, APPELLANT**

V.

**THE STATE OF TEXAS, APPELLEE**

---

On Appeal from the 362nd District Court
Denton County, Texas
Trial Court No. F23-4104-362, Honorable Bruce McFarling, Presiding

---

November 20, 2024

## MEMORANDUM OPINION

### Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Following a plea of not guilty, Appellant David Byrne, was convicted by a jury of manslaughter and sentenced to confinement for fourteen years.[1]  By his original and reply brief, Appellant contends (1) the evidence is insufficient to support his conviction and (2)

---

[1] TEX. PENAL CODE ANN. § 19.04(a).

he was egregiously harmed by the trial court's failure to instruct the jury on concurrent causation under section 6.04(a) of the Texas Penal Code.[2]  We affirm.

## BACKGROUND

During the evening hours of June 6, 2020, Appellant and his family, together with another family, went boating on Lake Lewisville.  They went to a lakeside restaurant and departed from there around midnight.  Appellant and others consumed alcoholic beverages on the way to the restaurant and while in the restaurant.  When they left the restaurant, one of the passengers heard the boat "beeping" and asked Appellant about the fuel situation.  Appellant assured him the boat had plenty of gas.  However, on the way home, the boat ran out of gas in the middle of the lake.  After approximately an hour, a tow boat operator brought fuel and cautioned Appellant to be careful in the dark due to petrified trees in the lake.  He advised him to "be safe" and "go slow."  Appellant responded that he had been driving on the lake for years and knew it like the back of his hand.

According to the evidence, once the boat was refueled, Appellant drove with enough speed to set the boat on plane.[3]  A game warden who was called to the scene, testified Appellant said he "struck a tree or some object."  L.C., an eleven-year-old female passenger in the front seat, was struck in the head, fell onto the floor, and sustained

---

[2] Originally appealed to the Second Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  TEX. GOV'T CODE ANN. § 73.001.  Should a conflict exist between precedent of the Second Court of Appeals and this Court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court.  TEX. R. APP. P. 41.3.

[3] The game warden explained that when a boat speeds up, it gets "on plane" and skims on top of the water.  His opinion that Appellant's boat was "on plane" was based on a video taken by one of the passengers.

serious injuries.  Appellant's wife called 911 and after the boat reached the shore, L.C., accompanied by her father, was airlifted to a hospital where she died a week later after being declared brain dead.  A medical examiner concluded the cause of death was blunt force injuries to the head.

Appellant was indicted for recklessly causing the death of L.C. by driving a watercraft at "an excessive rate of speed, or by driving the watercraft at an unreasonable time of day, or by failing to maintain a proper lookout for debris, or by driving a watercraft after consuming alcoholic beverages; and causing said watercraft to strike debris which resulted in the death" of L.C.[4]

**ISSUE ONE—SUFFICIENCY OF THE EVIDENCE TO SUPPORT MANSLAUGHTER CONVICTION**

Appellant maintains the evidence is insufficient to support his conviction because there was no evidence of reckless conduct and asserts his actions were merely careless or negligent.[5]  We disagree.

Due process requires that a conviction be based on legally sufficient evidence. *Harrell v. State*, 620 S.W.3d 910, 913 (Tex. Crim. App. 2021).  The only standard a reviewing court should apply is whether a rational jury could have found each essential element of the offense beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).  When reviewing the sufficiency of the evidence, we consider all evidence, direct and circumstantial and whether properly or improperly admitted, and view

---

[4] Appellant was also indicted for intoxication manslaughter but was acquitted.

[5] Appellant relies on concurrent causation in his sufficiency analysis.  Because we conclude in issue two that he was not entitled to such an instruction, it will not be considered in the sufficiency review.

3

it in the light most favorable to the verdict. *Dunham v. State*, 666 S.W.3d 477, 482 (Tex. Crim. App. 2023). In doing so, we compare the statutory elements as defined by a hypothetically correct jury charge. *Id.* The trier of fact is the sole judge of the credibility and weight to be attached to the evidence. *Id.* When the record supports conflicting inferences, we presume the trier of fact resolved those conflicts in favor of the verdict and defer to that determination. *Id.*

**ANALYSIS**

Manslaughter is a result-oriented offense. *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013). The State was required to prove Appellant recklessly caused L.C.'s death. TEX. PENAL CODE ANN. § 19.04(a). Although Appellant was charged with various theories of recklessness, proof of only one is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007).

"A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. TEX. PENAL CODE ANN. § 6.03(c). The risk created "must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.*

Recklessness requires the defendant to foresee the risk involved and consciously decide to ignore it. *Williams v. State*, 235 S.W.3d 742, 751 (Tex. Crim. App. 2007). Because an actor's mental state is something largely known only by the actor, the fact

4

finder's determination of an actor's culpable mental state is generally grounded on inferences drawn from the circumstances and inferred from the acts, words, and conduct of the actor. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

Appellant relies on *Queeman v. State*, 520 S.W.3d 616, 623 (Tex. Crim. App. 2017), and *Thedford v. State*, No. 05-18-00884-CR, 2020 Tex. App. LEXIS 6997, at *32 (Tex. App.—Dallas Aug. 28, 2020, pet. ref'd) (mem. op., not designated for publication), cases in which the evidence was found to be insufficient to support convictions for criminally negligent homicide. He argues L.C.'s death was the result of a tragic accident but was not a crime.

Manslaughter requires the mental state of recklessness—an accused must be aware of and consciously disregard a substantial and unjustifiable risk whereas criminal negligence requires that an accused *ought* to have been aware of a substantial and unjustifiable risk. TEX. PENAL CODE ANN. § 6.03(c), (d) (Emphasis added).

After being dispatched to the scene, the game warden spoke with Appellant. He detected a moderate smell of alcohol and conducted field sobriety tests.[6] He later inspected the boat and saw large spots of blood and a "big chunk of what looked like to be a [sic] tree debris in the front seat."

The game warden testified that when the Corps of Engineers builds lakes, "they don't come in and just bulldoze everything over. They actually kind of just flood the area. So there's trees left out there." He offered various reasons for trees being left, including

---

[6] A toxicologist testified Appellant's blood showed .065 grams of ethanol per one hundred milliliters of blood.

cost, and noted boaters must watch for hazards. "When you're on the water, you've got to worry about what's above the water and what's below the water." According to the game warden, "[Appellant] said he was aware of [trees] and knew the lake."

The game warden confirmed that Appellant received gas from the tow boat operator at 1:19 a.m. and the 911 call was made at 1:23 a.m. There was conflicting evidence of the accident's exact location due to possible drifting while the boat was stranded. Appellant told the game warden he struck an object "somewhere in the middle of the lake." It was later determined he struck a tree because there was part of a tree with blood in the broken window of the boat. But the game warden testified there are no trees in the middle of the lake. His experience was that trees are present on the left side and the right side is a safer path. He testified game wardens searched for a tree where Appellant claimed the accident happened but "did not find any object that looked like it had been struck." From concrete data such as the tow boat's geolocation and data extrapolated from the video provided by the victim's father, together with witnesses' statements, the game warden determined an approximate area where the boat hit debris, which he believed was on the left side of the lake.

The game warden testified it is not illegal or reckless to boat at night. Traditionally, there are no posted speed limits on a lake. In his opinion, though, speeding can be considered reckless operation of a vessel. He was asked if he could determine the approximate speed the boat was traveling from the video taken by the victim's father. He testified most vessels are traveling at approximately twenty miles per hour to get on plane, and he opined Appellant was going faster than necessary to get on plane. Over objection, he justified his answer as follows: "so if you're just on plane, you're not going to kick out

6

as big of a stern wave from the rear of the boat. And the next thing is looking at the ladies' hair, because both of them had long hair, and one actually had like a scarf . . . and the way it's flapping around, you know they're going at a faster speed."

The game warden added that in an area where there are known trees, precautions are important and one of the navigation rules is to adjust speed for the conditions present. He avoids operating a boat at night because it is dangerous due to limited visibility. When it is dark, maintaining an appropriate speed allows for a course correction and a vessel operator is responsible for keeping a proper lookout. He responded affirmatively when asked if the boat was being operated at the approximated speed at an unreasonable time of day. He also testified Appellant did not maintain a proper lookout for debris.

L.C.'s father testified that after the boat was refueled Appellant was "driving really fast" and told him "I can drive in this lake with my eyes closed." According to L.C.'s father, he felt the impact of hitting "something really hard" and Appellant "kept driving fast." He noticed L.C. was no longer in her seat and had fallen to the floor. He found her bleeding from her mouth, nose, and ears and asked Appellant's wife to call 911.

L.C.'s mother testified it was dark when they left the restaurant, and she asked Appellant if he could see to drive back. He responded, "he could drive with his eyes closed, because he already knew the area very well." She testified that before they left Appellant's house for the marina, she had heard Appellant's wife tell him they probably needed to get gas because their son had used the boat the night before.[7] She testified she was not sure of the boat's speed but "[i]t was not slow." She felt the boat hit something

---

[7] Appellant's wife denied speaking with Appellant about getting gas for the boat.

and described a "bump, bump." She went to check on L.C. and found her bleeding on the floor of the boat.

In the underlying case, the evidence showed the boat needed gas. The tow boat operator who brought fuel testified that Appellant, as operator of the boat, was responsible for keeping a proper lookout and controlling the speed of the boat. After providing fuel, he cautioned Appellant about petrified trees in the lake. The evidence further showed Appellant *knew* of trees in the lake. (Emphasis added). L.C.'s parents and the tow boat operator testified Appellant was confident he could maneuver the boat with his eyes closed because he knew the lake well. By operating the boat in the dark without keeping a proper lookout, claiming he could drive with his eyes closed while traveling at a speed estimated by the game warden to be excessive after being warned of trees in the area, Appellant should have foreseen the risk of danger. He knew of trees in the lake and consciously disregarded the tow boat operator's warning to "go slow." His conduct was a gross deviation from the standard of care that an ordinary person would have exercised under the circumstances. The jury was free to infer Appellant's mental state of recklessness from his acts, words, and conduct. His reliance on *Queeman* and *Thedford* are inapposite. We conclude the evidence is sufficient to support Appellant's conviction. Issue one is overruled.

**ISSUE TWO—CHARGE ERROR IN FAILURE TO INSTRUCT JURY ON CONCURRENT CAUSATION**

Appellant contends the trial court's failure to include a concurrent causation instruction in the charge was error which caused him egregious harm. He maintains the lack of notice by a government agency to warn boaters of trees in the lake was a concurrent cause of the accident which resulted in L.C.'s death. We disagree.

8

Appellate review of claimed jury-charge error involves a two-step process. *See Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). A reviewing court must initially determine whether charge error occurred. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). If so, the next step requires the reviewing court to analyze the error for harm with the standard of review for harm being dependent on whether error was preserved for appeal. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). Where, as here, the alleged error was not preserved by objection, Appellant can prevail only if he was egregiously harmed by an erroneous charge. *Arteaga v. State*, 521 S.W.3d 329, 338 (Tex. Crim. App. 2017). Jury charge error is egregious if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Id.* Egregious harm is a "high and difficult standard" which must be borne out by the trial record. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

An accused is entitled to an instruction on every defensive issue raised by the evidence. *Miller v. State*, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991). This is true whether the evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the evidence. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). The exclusion of a defensive instruction in the charge is reviewed for abuse of discretion. *Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000).

The Texas Penal Code provides for a concurrent causation instruction as follows:

9

(a) A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

TEX. PENAL CODE ANN. § 6.04(a). To be entitled to an instruction on concurrent causation, Appellant was required to show (1) "an agency in addition to [himself]" was a "but for" cause of the result charged *and* (2) some evidence demonstrated his conduct was "clearly insufficient" to cause the harm *and* the concurrent cause was clearly sufficient to cause harm. *Cyr v. State*, 665 S.W.3d 551, 557–58 (Tex. Crim. App. 2022) (emphasis added);[8] *Hutcheson v. State*, 899 S.W.2d 39, 42 (Tex. App.—Amarillo 1995, pet. ref'd). In other words, was the tree in the lake, unmarked by warnings, alone without Appellant's conduct, sufficient to cause L.C.'s death? We find it was not.

## ANALYSIS

The evidence showed that when Lake Lewisville was constructed, the Corps of Engineers flooded the area and left trees in the lake, not an uncommon practice. Appellant argues the government should have marked the area with buoys or signage to warn boaters of the danger and the failure to do so was a concurrent cause of the accident. As such, he asserts the trial court should have instructed the jury on concurrent causation and its failure to do so egregiously harmed him.

---

[8] *Cyr* provides the following illustration: two arsonists each light fire to the same house, one on the east side and one on the west side, both of which are independently sufficient to burn the house to the ground. Neither arsonist is entitled to an instruction on concurrent causation and both are criminally liable. The same result is reached if both fires would independently be insufficient to burn the house to the ground, but the combined force of the east fire and the west fire causes such a result. Only where the east arsonist can produce evidence that his fire was clearly insufficient to burn the house to the ground, and the west arsonist's clearly sufficient acting alone, would the east arsonist be entitled to an instruction on concurrent causation and potentially escape liability for the full extent of the damage caused under concurrent causation. 665 S.W.3d at 557(internal citation omitted).

10

According to the game warden, restricted areas are determined by the Corps of Engineers, marinas, or municipalities. They are usually marked by buoys or signs and are designed mostly to assist in navigation. The location of the accident was not considered a restricted area.

During her testimony, Appellant's wife was asked if she felt the boat suddenly turn to which she answered yes, "like he want[ed] to skip something." She claimed the boat did not hit a tree but instead "skipped" it. Yet, the game warden testified Appellant told him he struck a tree or some other object and bloody tree debris was found in the boat.

The record confirms that a tree in the lake, alone, without Appellant's conduct in operating the boat, was not a "but for" cause of L.C.'s injuries. The tree alone was not a clearly sufficient concurrent cause of the result. Thus, Appellant was not entitled to an instruction on concurrent causation. Because we find the absence of such an instruction did not result in error, we need not engage in a harm analysis under *Almanza*. Issue two is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Alex Yarbrough
Justice

Do not publish.

11