**Opinion issued December 15, 2016**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-15-00965-CR

—————————————

**TRACEY DEE CALVIN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case No. 14CR3211**

---

## MEMORANDUM OPINION

Appellant, Tracy Dee Calvin, was found guilty by a jury of the offense of third-degree felony assault of emergency services personnel.[1] The jury assessed Appellant's punishment at four years in prison. Based on the jury's

---

[1] *See* TEX. PENAL CODE ANN. § 22.01(b)(5) (Vernon Supp. 2016).

recommendation, the trial court suspended Appellant's prison sentence and placed her on community supervision for four years. In two issues, Appellant contends that the trial court erred by refusing to permit her expert witness to testify, and she claims that the evidence is insufficient to support the judgment of conviction.

We affirm.

## Background

On October 18, 2014, Appellant overdosed on drugs. After her mother called 9-1-1, Appellant was transported by ambulance to the emergency room at the University of Texas Medical Branch Hospital. Appellant was combative with EMS personnel on the way to the hospital and had to be restrained.

Appellant arrived at the emergency room at 8:38 p.m. Because she continued to be agitated and combative, Appellant's wrists and ankles remained restrained with soft restraints tethered to the stretcher on which she lay. The restraints allowed about eight inches of freedom of movement of her arms and legs.

Appellant was placed in her own room in the emergency room department. Her mother and brother were by her bedside. Emergency room nurse, E. Gaddis, was assigned to care for Appellant. That night, Nurse Gaddis was training another nurse, S. Young.

2

Nurse Gaddis counseled Appellant and her family regarding what behavior Appellant needed to exhibit to have the restraints removed. After a while, Appellant calmed down. The family requested that Appellant's restraints be removed, and the emergency room doctor agreed. Around 1:00 a.m., Appellant's restraints were removed. Appellant remained calm at first but, after her family left, she once again became combative with the staff. At 2:12 a.m., the restraints were again placed on Appellant. She became increasingly agitated, thrashing around on the stretcher, and yelling obscenities at the staff. Appellant's medical record indicate that she "continues to try and hit/kick us." When she ripped off her hospital gown, the staff told her that she was exposing herself, Appellant said, "I don't give a f---k."

Around 3:00 a.m., Nurse Gaddis and Nurse Young entered Appellant's room to draw blood from Appellant, using her IV line. When Nurse Young tried to flush the IV line, Appellant raised up and threw her head at Nurse Young, attempting to head-butt her. Nurse Gaddis, who was standing by Appellant's bed, informed Appellant that if she assaulted any of the nurses it would be a felony. Appellant looked Nurse Gaddis in the eye and said, "I don't give a f---k."

Appellant became increasingly agitated, attempting to free herself from the restraints. Appellant was able to untether one of the ankle restraints from the stretcher, freeing her leg. Once her leg was free, Appellant kicked Nurse Gaddis in

3

the face. Appellant tried to kick Nurse Gaddis a second time, but the nurse was able to avoid the second kick. Appellant was placed in more restrictive restraints, and the hospital's campus police department was contacted.

Appellant was later charged with the third-degree felony offense of assault of emergency services personnel. The indictment read as follows:

> Tracey Dee Calvin on or about the 19th day of October 2014 and anterior to the presentment of this indictment in the County of Galveston and State of Texas did then and there intentionally, knowingly, or recklessly cause bodily injury to [E.] Gaddis by kicking [E.] Gaddis with said defendant's foot, and the defendant did then and there know that the said [E.] Gaddis was then and there an emergency services personnel and that the said [E.] Gaddis was then and there providing emergency services, to-wit: attempting to treat and/or perform a test on said defendant.

A jury found Appellant guilty of the charged offense and assessed her sentence at four years in prison. The jury recommended that Appellant be placed on community supervision. The trial court followed the jury's recommendation, suspended Appellant's prison sentence, and placed her on community supervision for four years. This appeal followed in which Appellant raises two issues.

## Sufficiency of the Evidence

In her second issue, Appellant asserts that the evidence was insufficient to support the judgment of conviction.

4

**A.    Standard of Review**

We review the sufficiency of the evidence establishing the elements of a criminal offense for which the State has the burden of proof under a single standard of review. *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013) (citing *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)). This standard of review is the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). *See Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

Pursuant to the *Jackson* standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Garcia v. State*, 367 S.W.3d 683, 686 (Tex. Crim. App. 2012). Evidence may be legally insufficient when the record contains "no evidence of an essential element, merely a modicum of evidence of one element, or if it conclusively establishes a reasonable doubt." *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013).

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443

U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793.

## B. Elements of the Offense

As charged in this case, a person commits the third-degree felony offense of assault of emergency services personnel if she intentionally, knowingly, or recklessly causes bodily injury to an emergency services personnel while that person is providing emergency services. *See* TEX. PENAL CODE ANN. § 22.01 (a)(1), (b)(5) (Vernon Supp. 2016). Penal Code Section 22.01 defines "emergency services personnel" to include "emergency room personnel." *Id.* § 22.01(e)(1).

## C. Analysis

Emergency room nurses Gaddis and Young testified at trial. Appellant's emergency room medical records were also admitted into evidence. Nurse Gaddis testified that she and Nurse Young entered Appellant's room to draw Appellant's blood by using the IV line. Nurse Gaddis stated that they explained the blood-draw procedure to Appellant and that she appeared to understand, telling the nurses she "didn't give a f---k." Nurse Young then started the blood-draw procedure. Nurse Gaddis testified that Appellant "lurched forward attempting to head-butt [Nurse Young]" but was unsuccessful. Nurse Gaddis testified that she then

6

informed Appellant "that if she . . . were to assault me or [Nurse Young] or any of the nurses on the staff, that it would be a felony." Nurse Gaddis said that Appellant then "looked me straight in the eye and said, 'I don't give a f---k.'" Appellant then "became even more agitated, kicking, trying to free herself, freeing her leg from her left ankle restraints."

Nurse Gaddis explained,

[S]he had been so agitated and repeatedly trying to remove herself from her restraints, there is a point where—I mean, it's a fabric tie. So it does become loosened, which is also another safety feature if it did need to come into play to remove the safety restraints. So she had pulled enough that it loosened from the stretcher.

Nurse Gaddis testified that, after freeing her left leg, Appellant kicked her in the face, causing her pain. She stated that, after kicking her, Appellant attempted to kick her a second time with the freed leg, but Appellant was not successful the second time.

Nurse Young gave similar testimony. She indicated that Appellant was alert, orientated, and responsive when the blood draw was started. Nurse Young confirmed, as did Appellant's medical records, that Appellant attempted to head-butt her. Nurse Young also testified that Appellant stated that she did not "give a f---k" when Nurse Gaddis warned Appellant that if she assaulted one of the nurses it would be a felony. She testified that Appellant then "broke through the ankle restraint and kicked [Nurse Gaddis] in the face."

7

On appeal, Appellant asserts that the evidence did not establish that she had the required mental state to commit the offense of assault; that is, she claims that she did not intentionally, knowingly, or recklessly cause bodily injury to Nurse Gaddis by kicking her. She claims that the evidence showed only that she had been agitated and combative but did not show that she had intended to break the restraints and kick Nurse Gaddis. Appellant intimates that she did not know that the restraints would break. Appellant points out that when she kicked Nurse Gaddis, she had been restrained for hours, and the restraints had not broken even though she had been combative and thrashing around on the stretcher.

In her brief Appellant asserts, "[T]he restraint and its failure are the causing [sic] factor for the physical contact of the nurse." She continues, "The failure of the restraint absolves appellant of culpability in that she could not have committed a voluntary act unless she intended, knew or should have known the restraint would or could break and result in physical contact."

A person acts "intentionally, or with intent" with respect to a result of his conduct when it is his conscious objective or desire to cause the result. TEX. PENAL CODE ANN. § 6.03(a) (Vernon 2011). A person acts "knowingly, or with knowledge" with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). A person acts "recklessly, or is reckless" with respect to the result of his conduct when he is

8

aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id.* § 6.03(c).

Culpable mental state is most commonly grounded upon inferences to be drawn by the factfinder from the attendant circumstances. *Lane v. State*, 763 S.W.2d 785, 787 (Tex. Crim. App. 1989). The jury may infer intent or knowledge from any facts that tend to prove its existence, including the acts, words, and conduct of the accused. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).

Here, the State presented evidence to establish that Appellant had the required mental state to support her conviction. The evidence showed that, when she kicked Nurse Gaddis, Appellant was alert, orientated, and understood that the nurses were there to draw her blood. The evidence also showed that, immediately before kicking Nurse Gaddis, Appellant had tried to head-butt Nurse Young. When Nurse Gaddis warned her that if she assaulted one of the nurses she could be charged with a felony, Appellant acknowledged her understanding of this by responding that she did not "give a f---k." According to Nurse Gaddis's testimony, Appellant then attempted to break free of the restraint. Both nurses testified that, when she successfully broke free, Appellant kicked Nurse Gaddis in the face. Nurse Gaddis testified that Appellant then attempted to kick her a second time. From this evidence, the jury could have reasonably inferred that Appellant had the required mental state to commit the offense of assault when she kicked Nurse

Gaddis. In other words, the jury could have reasonably inferred that Appellant had intentionally, knowingly, or recklessly caused bodily injury to Nurse Gaddis by kicking her.

Viewing the evidence in the light most favorable to the verdict, we conclude a rational fact finder could have found, beyond a reasonable doubt, each element necessary to support the finding that Appellant committed the offense of assault of emergency services personnel. Accordingly, we hold that the evidence was sufficient to support the judgment of conviction.

We overrule Appellant's second issue.

**Exclusion of Expert Witness**

In her first issue, Appellant contends that the trial court erred by excluding her expert witness.

On May 15, 2015, the State filed a motion, requesting the trial court to order Appellant to disclose the name and address of each expert witness she planned to call at trial. The State asserted that the "disclosure of the name and address of expert witnesses is authorized by Article 39.14(b) of the Texas Code of Criminal Procedure." The trial court did not rule on the State's motion until the first day of trial on October 12, 2015. The trial court granted the motion, ordering Appellant to disclose her expert witnesses that same day. Appellant did not notify the State that day that she planned to call any experts to testify.

The State presented its case-in-chief on October 13. At the end of the day, the State rested, and the jury was excused.

The next morning, October 14, a hearing was held outside the presence of the jury. The State's counsel informed the trial court that Appellant's counsel had sent an email to them the night before at 8:57 p.m., notifying the State for the first time that Appellant planned to call an expert witness, a psychologist, to testify the next morning. The State's counsel asserted that Appellant had not provided them with enough time to prepare for the expert's testimony. Even though the email had been sent the night before, the prosecution had only learned of the email that morning. The State pointed out that Appellant had not complied with the October 12 discovery order, requiring her to disclose the name and address of her expert witnesses that same day on October 12.

Appellant's counsel responded by claiming that he had verbally mentioned the expert witness to the State at some earlier time and that it was known that the trial court had approved funding for the defense to retain an expert witness. Defense counsel also indicated that he had not planned to call the expert witness to testify but had changed his mind after hearing the State's witnesses the previous day. Defense counsel asserted that he was calling the expert to rebut the State's witnesses and that he was not required to give notice of a rebuttal witness. The

State countered that Appellant was not calling the expert as a rebuttal witness; rather, Appellant was seeking to call the expert during the defense's case-in-chief.

Appellant's counsel then told the trial court: "[I]t's my defense and they [the State's counsel] don't have to know about it right now." At that point, the trial court stated,

> You do have to comply with a court order. And I'm looking at the court order; and it says "that you shall provide information regarding expert witnesses no later than 12th day of October, 2015." We discussed that order here. I signed it here, and you needed to provide that information. You failed to provide that information by the 12th day of October; and, therefore, your expert is stricken.

Appellant's counsel then claimed that he had not been aware of the discovery order. Appellant's counsel asserted that he never received a copy of the order and questioned how he should have been aware it. The trial court responded, "Because you were standing right there when they gave me the order, and I signed it in front of you." The State pointed out that a copy of the order was in the file.

Defense counsel stated that he wanted the record to reflect that he had been unaware of the discovery order. The trial court, in turn, responded,

> And I want the record to reflect that my recollection is that both parties were standing before the bench when the State presented the Court with this order and stated what the order was for. I read the order, signed it, and stated that I've signed the order. Therefore, [defense counsel], you were aware of this order; and you should have disclosed any expert witnesses to the State that same day. You failed to do so. Therefore, your expert will not be allowed.

12

The State's counsel also stated, "And, Judge, I just want the record to reflect that [co-counsel] and I both separately on multiple occasions asked [defense counsel] who that witness was after you signed that order; and he told us he was not calling an expert."

The jury was returned to the court room. Without presenting any evidence, the defense rested.

On appeal, Appellant asserts that the trial court abused its discretion when it struck her expert witness because the discovery order, on which the trial court based its decision to strike Appellant's expert, did not comply with Texas Code of Criminal Procedure article 39.14(b). That article provides,

> (b) On a party's request made not later than the 30th day before the date that jury selection in the trial is scheduled to begin or, in a trial without a jury, the presentation of evidence is scheduled to begin, the party receiving the request shall disclose to the requesting party the name and address of each person the disclosing party may use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence. Except as otherwise provided by this subsection, the disclosure must be made in writing in hard copy form or by electronic means not later than the 20th day before the date that jury selection in the trial is scheduled to begin or, in a trial without a jury, the presentation of evidence is scheduled to begin. On motion of a party and on notice to the other parties, the court may order an earlier time at which one or more of the other parties must make the disclosure to the requesting party.

TEX. CODE CRIM. PROC. ANN. art. 39.14(b) (Vernon Supp. 2016).

Appellant interprets article 39.14(b) to require a trial court, compelling the disclosure of expert witnesses, to sign the discovery order more than 20 days

13

before trial. She points out that the discovery order in this case was signed on the first day of trial. For this reason, Appellant asserts that the trial court abused its discretion when it struck her expert witness based on her failure to comply with the discovery order. We note, however, Appellant never raised the issue of noncompliance with Article 39.14(b) in the trial court.

The Court of Criminal Appeals has stated,

> [T]he party complaining on appeal (whether it be the State or the defendant) about a trial court's admission, exclusion, or suppression of evidence must, at the earliest opportunity, have done everything necessary to bring to the judge's attention the evidence rule or statute in question and its precise and proper application to the evidence in question.

*Martinez v. State*, 91 S.W.3d 331, 335–36 (Tex. Crim. App. 2002) (internal quotations omitted). The Court of Criminal Appeals also recognized that it "violates ordinary notions of procedural default for a court of appeals to reverse a trial court's decision on a legal theory that the complaining party did not present to the trial court." *State v. Bailey*, 201 S.W.3d 739, 743 (Tex. Crim. App. 2006). The court "established that it is improper for an appellate court to reverse a case on a theory not raised at trial or on appeal." *Id.*; *see also Hailey v. State*, 87 S.W.3d 118, 122 (Tex. Crim. App. 2002). Accordingly, because it was not raised in the trial court, we do not consider Appellant's theory that the trial court abused its discretion by striking Appellant's expert based on the discovery order, which Appellant claims did not comply with Article 39.14(b). *See Bailey*, 201 S.W.3d at

14

743; *Hailey*, 87 S.W.3d at 122. Appellant has presented no other argument on appeal to show that the trial court abused its discretion when it struck her expert witness.

Moreover, even if she had met her burden to show that the trial court erred by striking her expert, Appellant did not demonstrate in the trial court what the substance of her expert psychologist's testimony would have been. To preserve an exclusion of evidence for appellate review, an appellant must make an offer of proof or a bill of exceptions demonstrating what the excluded evidence and testimony would have been. TEX. R. EVID. 103(a)(2); *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009). One of the primary purposes of an offer of proof is to enable an appellate court to determine whether the exclusion was harmful. *Mays*, 285 S.W.3d at 890.

Generally, an erroneous admission or exclusion of evidence does not result in reversible error unless it affects a substantial right of the accused. *See* TEX. R. APP. P. 44.2(b); *Walters v. State*, 247 S.W.3d 204, 218 (Tex. Crim. App. 2007). An error affects a defendant's substantial rights when the error has a substantial and injurious effect or influence on the jury's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Without knowing the substance of the expert's testimony, we would not be able to determine whether the exclusion of the expert's testimony affected Appellant's substantial rights. *See* TEX. R. APP. P.

44.2(b).  That is, even if Appellant had shown error, we could not determine whether the error had a substantial and injurious effect or influence on the jury's verdict.  *See King,* 953 S.W.2d at 271.

We overrule Appellant's first issue.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Lloyd.

Do not publish.  TEX. R. APP. P. 47.2(b).