

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0175-13

**SAMANTHA AMITY BRITAIN, Appellant**

**V.**

**THE STATE OF TEXAS**

## ON DISCRETIONARY REVIEW
## FROM THE FOURTH COURT OF APPEALS,
## GUADALUPE COUNTY

*Womack, J., delivered the unanimous opinion of the Court.*

A jury convicted the appellant of manslaughter and injury to a child for recklessly causing

the death of her step-daughter. The Fourth Court of Appeals held that there was insufficient

evidence that the appellant was "aware of but consciously disregard[ed] a substantial and

unjustifiable risk" as required to prove recklessness. Accordingly, the Fourth Court reversed the

judgment of the trial court and entered a judgement of acquittal on both counts.[1] We granted the State Prosecuting Attorney's petition for discretionary review to answer one question: Should the Court of Appeals have reformed the verdict to the lesser-included offense of criminally negligent homicide rather than rendering a verdict of acquittal?

**I**

The evidence at trial showed that around eight in the morning of February 4, 2008, the complainant, eight-year-old Sarah Brasse, went to her school's nurse's office complaining of a stomachache. The nurse had her lie down for a little while and then sent her to class because the bell was about to ring. About an hour later, Sarah returned saying she still felt ill. She attempted to use the bathroom, and she laid down again. After a little bit, Sarah reported that she was feeling better and once again the nurse sent her back to class.

Around eleven a.m., Sarah came back a third time. This time she was visibly uncomfortable and crying. The school nurse did a physical exam which showed no abnormalities. However, because of the frequency of Sarah's visits and the fact that she was tearful, the nurse decided to send her home. Both Sarah's father and the appellant, Sarah's step-mother, told the nurse that Sarah was a "drama queen." Nonetheless, the appellant picked Sarah up from school a little before noon, at which time Sarah appeared to be feeling better.

Sometime that evening, Sarah vomited for the first time. The testimony was unclear as to whether she was able to eat dinner, but she did drink water. Sarah's brother heard Sarah vomit two or three times throughout the night. The next morning, the appellant kept Sarah home from school because she was still not feeling well. Throughout the day Sarah vomited some more and

---

[1] *Britain v. State*, 392 S.W.3d 244 (Tex. App. — San Antonio 2012, pet. granted).

developed diarrhea, but she continued to drink water.

Around six p.m. on February 5, 2008, the appellant found Sarah dead. Rigor had already set in by the time paramedics arrived, but the appellant reported having checked on her only fifteen or twenty minutes before. An emergency-room doctor estimated that the time of death was around three p.m., but she admitted that several factors could have sped up rigidity and lividity. Acute appendicitis was the cause of death. The appellant was charged with manslaughter on the premise that her failure to take Sarah to the doctor led to the child's death.

## II

To determine if evidence is legally sufficient, a court must decide whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[2] Under this standard, evidence may be legally insufficient when the record contains either no evidence of an essential element, merely a modicum of evidence of one element, or if it conclusively establishes a reasonable doubt.[3]

To prove manslaughter, the evidence must prove that the defendant recklessly caused the death of an individual.[4] "A person acts recklessly ... when he is aware of but consciously disregards a substantial and unjustifiable risk. ... The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person

---

[2] *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Prible v. State*, 175 S.W.3d 724, 729-30 (Tex. Cr. App. 2005).

[3] *See Jackson*, 443 U.S., at 320.

[4] Tex. Penal Code § 19.04.

would exercise under all the circumstances as viewed from the actor's standpoint."[5] Manslaughter is a result-oriented offense: the mental state must relate to the results of the defendant's actions.[6] Criminally negligent homicide is a lesser-included offense of manslaughter because it includes all the elements of manslaughter except for manslaughter's higher culpable mental state.[7] To prove criminally negligent homicide the State must show that the defendant negligently caused the death of an individual.[8] "A person acts with criminal negligence ... when he ought to be aware of a substantial and unjustifiable risk. ... The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint."[9]

In *Bowen v. State,*[10] we overruled *Collier v. State,*[11] which prohibited courts of appeals from reforming convictions to lesser-included offenses that had not been either requested by a party or included in the jury charge.[12] We reasoned that the "fact finder's determination of guilt should not be usurped in the punishment phase if the evidence is legally sufficient to support a

---

[5] TEX. PENAL CODE § 6.03(c).

[6] *Schroeder v. State,* 123 S.W.3d 398, 400-01 (Tex. Cr. App. 2003).

[7] *Masterson v. State*, 155 S.W.3d 167, 172 (Tex. Cr. App. 2005).

[8] TEX. PENAL CODE § 19.05.

[9] *See* TEX. PENAL CODE §6.03(d).

[10] 374 S.W.3d 427 (Tex. Cr. App. 2012).

[11] 999 S.W.2d 779 (Tex. Cr. App. 1999).

[12] *Bowen,* 374 S.W.3d, at 432.

conviction."[13] The State Prosecuting Attorney argues that the Court of Appeals erred under *Bowen* by rendering a judgment of acquittal rather than reforming the judgment to a conviction for the lesser-included offense of criminally negligent homicide. We disagree.

**III**

While *Bowen* held that a court of appeals *may* reform a judgment to a lesser-included offense, we have not held, and do not (under these facts) hold, that the court of appeals *must* do so. Rule of Appellate Procedure 43.2(c) provides, "The court of appeals may: ... reverse the trial court's judgment in whole or in part and render the judgment that the trial court should have rendered."

The statement that the court may render a judgment that the trial court *should* have rendered is significant. As we stated in *Bowen,* the fact finder's determination should not be usurped *if* the evidence is legally sufficient.[14] If the evidence proves a greater offense, it necessarily proves the lesser offense, but of course if the evidence does not prove the greater offense it also may not have proven the lesser. When the Court of Appeals held (and the State did not contest) that there was no evidence of the required mental state (recklessness), it did not also find that there was evidence of the lesser mental state (negligence).

It is much easier to say that the lesser-included offense has been proven in cases in which the evidence is legally insufficient only as to an aggravating element, as in *Bowen.* There the State charged the defendant with misapplication of fiduciary property in an amount over

---

[13] *Ibid.*

[14] *Bowen,* 374 S.W.3d at 432.

$200,000.[15] While the State proved the misapplication of fiduciary property, its indictment alleged only one owner of the misapplied property.[16] Consequently, the State proved only that the part owned by the named victim was misappropriated, not the entire amount.[17] In that case, it was easy for the Court of Appeals to render a verdict for the lesser-included offense because there was no question that the essential elements of the lesser crime were proven. It would be a similar situation if the State charged someone with felony DWI and presented legally sufficient evidence of the DWI conduct but not of the enhancing prior conviction. In such a situation it is easy to strike the aggravating element and reform the judgment to reflect the crime without the enhancement.

## IV

In this case, the State has failed to prove an essential element, something that cannot be merely eliminated from the conviction. In such cases an appellate court should not render a judgment of conviction for a lesser-included offense unless there is proof beyond a reasonable doubt of all elements of the lesser-included offense. On these facts, such a finding would have been error.

The State urges us to assume that because the jury found (through its guilty verdict) that the appellant acted recklessly, they necessarily also found that she acted negligently. This logic is flawed because the State does not contest that the jury erred in its finding of recklessness. Consequently, we cannot say (without a more thorough examination of the facts) that whatever

---

[15] *Id.,* at 428.

[16] *Ibid.*

[17] *Ibid.*

error led to the finding of recklessness did not extend to the entire evaluation of mental state.

To prove that the appellant acted negligently, the State would have had to show beyond a reasonable doubt that the appellant ought to have been aware of the substantial and unjustifiable risk posed by not taking Sarah to a doctor and that such a failure was a gross deviation from the standard of care than any ordinary person would have exercised. The State failed to meet this burden.

Five medical professionals testified at the appellant's trial. There was conflicting and mixed testimony concerning Sarah's level of risk, the cause of death, and the ease of diagnosis. For instance, Sarah's school nurse, Dawn Bishop, testified that she would absolutely take her child to a doctor if the child had been sent to the nurse several times and if the symptoms worsened. However, she did not tell the appellant that Sarah should be taken to the doctor. The appellant, unlike Bishop, is not a medical professional. One cannot impute to a layperson the standard of care that Bishop would have exercised.

The ER doctor, Gale Gregory-Lane, testified that she believed Sarah asphyxiated on her own vomit. Such a death could happen quite quickly. Dr. Gregory-Lane stated that the initial signs of appendicitis could also be indicative of any number of other medical problems, many of which were less serious. She did testify that a parent should seek medical attention for a child who has vomited for more than a 24 hour period, and sooner if the child appears dehydrated. The evidence at trial showed that Sarah was most likely vomiting for less than 24 hours and was not seriously dehydrated. Again, this evidence also was judged by the standard of care of a parent who is also a medical professional. Consequently, it does not determine an ordinary person's standard of care.

The medical examiner, Dr. Elizabeth Peacock, testified that Sarah did not asphyxiate and that the sole cause of her death was the acute appendicitis. Dr. Peacock testified that the infection in Sarah's appendix probably had been developing for three or four days and that it would be easy for a lay-person to confuse appendicitis with the stomach flu.

Two doctors testified for the defense: Dr. Gabriel Magraner, a gastroenternologist, and Dr. William Anderson, a pathologist. These witnesses also disagreed on many of the details, but both testified that Sarah's appendicitis manifested in an abnormal way and would have been difficult to diagnose.

Dr. Magraner testified that Sarah's symptoms were more consistent with a stomach flu than with appendicitis and that, based on the nurse's report, it was unlikely anyone would have expected a traumatic event in the next 24 hours. While he did testify that one should take children to a doctor in most instances to err on the side of caution, he did not testify that any lay person would know this or that it would fall below an objective standard of care not to seek medical help.

Dr. Anderson, unlike the other witnesses, testified that Sarah suffered from active-chronic appendicitis (rather than acute) and that the condition would have been developing for a minimum of three or four days. According to Dr. Anderson, the disease ate away Sarah's pain fibers so that she had an abnormally low level of pain. Further, he believed the condition would have improved several times before it ultimately killed her. These two factors would have made the condition nearly impossible to diagnose, especially for laymen.

There was no evidence concerning the standard of care an ordinary person should be held to or that showed the appellant should have been aware of the risk to Sarah. Given this lack of

evidence and the conflicting testimony of the medical experts concerning the ease with which such a serious risk was identified, we cannot say that the State proved beyond a reasonable doubt that the appellant acted with negligence. The Court of Appeals did not err in rendering a judgment of acquittal, and we affirm that decision.

Delivered: October 9, 2013.
Publish.