

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-17-00192-CR
_____

**LATHER LEWIS, APPELLANT**

**V.**

**STATE OF TEXAS, APPELLEE**

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2017-411,783; Honorable William R. Eichman II, Presiding

August 22, 2018

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant, Lather Lewis, appeals his conviction for the offense of aggravated assault.[1]  By two issues, he maintains (1) the State failed to prove beyond a reasonable doubt that he committed the offense and (2) the trial court erred when it denied his motion

---

[1] TEX. PENAL CODE ANN. § 22.02(a)(1) (West 2011).  As indicted, the offense is a second degree felony punishable by confinement of not more than twenty years or less than two years and by a fine not to exceed $10,000.  § 12.33(a).

for a mistrial following the State's alleged improper comment on his right to not testify. We affirm the judgment of the trial court.

BACKGROUND

On April 24, 2015, Richard Segura and Antonio Gonzales were assaulted when they left a Lubbock night club known as the Hitching Post. Prior to the assault, both men had been drinking heavily and it was shown that Gonzales's blood alcohol content was over four times the legal limit. As Segura and Gonzales proceeded to Segura's vehicle, an altercation broke out between them and a group of men standing in the parking lot. Both men were able to enter Segura's vehicle and shut the doors before they realized that Segura had dropped his key during the altercation. When Segura exited his vehicle to retrieve his key, he was assaulted by a slim black male wearing a white t-shirt and identified at trial as Appellant. Gonzales also exited the vehicle and he too was assaulted. When Segura was able to get to the other side of his vehicle he found Gonzales lying on the ground unresponsive. During the assault, Segura suffered a broken cheekbone and Gonzales sustained a severe head injury. Gonzales was taken to the hospital where he died approximately a week later.

At trial, Stevie Manahan, the owner of the Hitching Post, identified Glen Hooper and Appellant as being the persons involved in the melee with Segura and Gonzales. Although no one could say for certain who it was that assaulted Gonzales, Manahan testified that he overheard Appellant saying "outlaw, one hitter quitter," which he interpreted as "bragging" about knocking Gonzales out. As to the reference "outlaw," Manahan identified Appellant as being a member of a horse riding group calling itself the "outlaws." Another witness testified that, after the altercation, Appellant came back into

2

the bar and was bragging, "I just got me one outside . . . a Spanish guy, old Spanish guy," while still another witness attributed Appellant as bragging, "this is how we knock them out."

Appellant, a slim black male, was later apprehended wearing a blood-spattered t-shirt and tennis shoes. DNA testing identified the blood on Appellant's t-shirt as matching Segura's DNA profile. In a statement given to the police, Appellant admitted to being at the Hitching Post during the altercation, but he denied any involvement in the altercation, explaining that he was only trying to help the two Hispanic males find their keys. Photographs of Appellant's hands taken by the police showed no signs of his having been involved in a fight.

Appellant did not testify; however, he did offer the testimony of two witnesses. One witness testified that Manahan had once told her that Hooper killed a man at the Hitching Post and that an innocent man was in jail. Later cross-examination, however, indicated that the witness believed Manahan was talking about a shooting incident at the club and not the altercation that occurred on April 24, 2015. The other witness merely testified that she was at the Hitching Post the night of the altercation, that Appellant was there, and that she did not see the fight.

In his closing arguments, Appellant's counsel argued that he did not have the requisite intent to cause serious bodily injury to Gonzales and he further contended that the result—Gonzales's death—should not be considered as conclusive evidence of his intent. In response, the State argued that "[Appellant] wishes Mr. Gonzales hadn't died . . . ." Appellant's counsel immediately objected to the prosecutor's statement as a

comment on Appellant's failure to testify. The trial court sustained the objection and instructed the jury to disregard the prosecutor's comments. Appellant's subsequent request for a mistrial was denied.

The *Court's Charge* to the jury included a "law of parties" instruction. Following its deliberations, the jury returned a verdict of "guilty." Appellant elected to have the court assess his punishment and, during the punishment phase, he plead "Not True" to the State's enhancement allegation. The trial court found the enhancement allegation to be true and assessed his punishment at fifty years confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant gave timely notice of appeal.

### AGGRAVATED ASSAULT

A person commits the offense of aggravated assault "if the person commits assault as defined in Section 22.01 [of the Texas Penal Code] and the person . . . causes serious bodily injury to another." TEXAS PENAL CODE ANN. § 22.01(a)(1) (West 2011). An "assault" is committed "if the person . . . intentionally, knowingly, or recklessly causes bodily injury to another." *Id.* Serious bodily injury is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." § 1.07(a)(46).

### LAW OF PARTIES

Under the law of parties, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." § 7.01(a) (West 2011); *Adames v. State*, 353 S.W.3d 854, 862 (Tex. Crim. App. 2011). A person is criminally responsible for an

4

offense committed by the conduct of another if "acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." § 7.02(a)(2) (West 2011); *Adames*, 353 S.W.3d at 862. Mere presence alone will not constitute one a party to an offense and it is insufficient to support a conviction as a party to the offense. *Gross v. State,* 380 S.W.3d 181, 186 (Tex. Crim. App. 2012).

STANDARD OF REVIEW

The only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *Brooks v. State,* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). In determining whether the evidence is legally sufficient to support a conviction, a reviewing court considers all the evidence in the light most favorable to the verdict and determines whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Queeman v. State,* 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

Here, as to guilt or innocence, the jury was the sole judge of the credibility of the witnesses and the weight to be given to their testimonies, and as a reviewing court, we must defer to those determinations and not usurp its role by substituting our judgment for that of the jury. *Id.* (citing *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012)). The duty of a reviewing court is simply to ensure that the evidence presented supports the fact finder's verdict and that the State has presented a legally sufficient case

of the offense charged. *Id.* When a reviewing court is faced with a record supporting contradicting conclusions, the court must presume the fact finder resolved any such conflicts in favor of the verdict, even when not explicitly stated in the record. *Id.* "Under this standard, evidence may be legally insufficient when the record contains no evidence of an essential element, merely a modicum of evidence of one element, or if it conclusively establishes a reasonable doubt." *Id.* (quoting *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013)).

The sufficiency standard set forth in *Jackson* is measured against a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge is one that accurately sets forth the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

ISSUE ONE

To establish Appellant's guilt, the State was required to prove beyond a reasonable doubt that (1) Appellant, (2) intentionally, knowingly, or recklessly, (3) caused serious bodily injury, (4) to Antonio Gonzales. Furthermore, under the law of parties, the evidence would be sufficient if the State were able to prove, again beyond a reasonable doubt, that, acting with the intent to promote or assist Glen Hooper in the commission of the offense of aggravated assault, he solicited, encouraged, aided, or attempted to aid Hooper in the commission of that offense. We will first analyze whether the evidence was sufficient to establish Appellant's guilt under the law of parties. If the evidence is sufficient to establish

6

Appellant's guilt under that theory, it becomes unnecessary for us to analyze whether he would also be guilty as the primary actor.

As to the four elements listed above, the only element Appellant challenges is the question of whether he, or a person for whom he was criminally responsible, was the person responsible for Gonzales's injuries. In that regard, the testimony established that he was present at the scene of the assault and he was sufficiently close to the action to have Segura's blood on his clothing. Evidence also established that he was either aiding or being aided by Glen Hooper in the commission of that assault and the statements attributed to Appellant, "outlaw, one hitter quitter," and "I just got me one outside . . . a Spanish guy, old Spanish guy," can be considered as circumstantial evidence of his personal involvement in the blows that felled Gonzales. Considering this evidence in the light most favorable to the verdict and based on that evidence and reasonable inferences to be drawn therefrom, we find a rational trier of fact could have found the essential elements of the offense of aggravated assault beyond a reasonable doubt. Issue one is overruled.

ISSUE TWO

By his second issue, Appellant contends the trial court erred when it denied his motion for a mistrial following the State's alleged improper comment on his right to not testify. Reflecting on Gonzales's death as an unfortunate result of a bar fight—defense counsel argued that Appellant did not have the requisite intent to cause serious bodily injury. In response, the State postulated, "[Appellant] *wishes* Mr. Gonzales hadn't died . . . ." (Emphasis added.) Appellant's counsel immediately objected to the prosecutor's

7

statement as a comment on Appellant's failure to testify. The trial court sustained the objection and instructed the jury to disregard the prosecutor's comments. It also denied Appellant's subsequent request for a mistrial.

A mistrial is an extreme remedy that is reserved for a very narrow classification of circumstances involving highly prejudicial and incurable errors. *See Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (citing *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). A mistrial is used to halt proceedings when the error involved makes the expenditure of further time and expense wasteful and futile. *Id.* (citing *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). The decision to grant a mistrial is governed by the particular facts of the case. *Id.* We review a trial court's decision to deny a motion for mistrial for an abuse of discretion. *Id.* The denial of the motion for mistrial must be upheld if, when viewing the evidence in the light most favorable to the denial, it was within the zone of reasonable disagreement. *See id.*

Ordinarily, a prompt instruction to disregard will cure any prejudice arising from an inadvertent statement. *See Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000); *Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998). In determining whether an offending statement is "highly prejudicial and incurable," reviewing courts have applied the three-factor balancing test articulated in *Mosley v. State,* 983 S.W.2d 249, 259 (Tex. 1998). In their analysis, courts have looked at: (1) the severity of the misconduct (i.e., the magnitude of the prejudicial effect of the prosecutor's remark); (2) the curative measures taken (the efficacy of any cautionary instruction by the trial judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction).

Here, the prosecutor's brief statement was not uninvited, as defense counsel had already made argument regarding Appellant's intent with respect to the nature of the injuries sustained. Furthermore, because someone's state of mind subsequent to an offense is irrelevant to his subjective intent at the time the offense was committed, it cannot be said with any degree of certainty that the prosecutor's misstatement even prejudiced him. Also, the trial court took immediate action in admonishing the jury to disregard the prosecutor's statement. That instruction was clear and specific and we can presume the jury followed that instruction. Finally, the ultimate fact contained in the statement (Gonzales's death) was not fact determinative of the offense. The evidence clearly and sufficiently established that the victim had sustained a serious bodily injury. Under these facts, we cannot say that the prosecutor's statement was highly prejudicial and incurable. Accordingly, the trial court did not err in denying Appellant's motion for mistrial. Issue two is overruled.

CONCLUSION

The judgment of the trial court is affirmed.

Patrick A. Pirtle
Justice

Do not publish.