COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| DANNY THOMAS MOLINA, | § | No. 08-16-00318-CR |
| Appellant, | § | Appeal from the |
| v. | § | 112th District Court |
| THE STATE OF TEXAS, | § | of Upton County, Texas |
| Appellee. | § | (TC# 16-03-U1125-DSM) |
| | § | |

## **O P I N I O N**

Danny Thomas Molina appeals his conviction on one count of delivery of cocaine in an amount of less than one gram.[1] In two issues, Molina contends (1) the trial court erred in compelling Molina to show tattoos on his arm and neck to the jury during trial; and (2) the evidence was legally insufficient to establish Molina's identity based solely on a voice identification. We affirm.

### BACKGROUND

On June 13, 2014, during the evening hours, Brandon Busby, a reserve deputy with the Upton County Sherriff's Department, was assigned to work undercover buying narcotics in

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(b) (West 2017) and 481.102(3)(D) (West Supp. 2017).

McCamey, Texas. Deputy Busby wore an audio recorder to record conversations he had while working. Driving a pickup truck, Deputy Busby pulled into a nearby gas station and approached a man pumping gas. Busby described the man he saw as "a heavier[-]built Hispanic male with tattoos on his neck and both arms," who was approximately twenty-five to thirty-five years old. Busby approached and started a conversation asking whether "he knew where I could get any work." Busby explained the phrase he used, which he had learned from his training, was commonly used language, or "lingo," for knowing about buying narcotics.

Initially, the man reacted by asking if he was referring to tattoo work. Deputy Busby laughed then explained that he wanted to buy "ice," which referred to methamphetamines. The man responded saying he might have some "candy," a slang for cocaine. Eventually, the man asked how much money Deputy Busby had on him. When Deputy Busby replied that he had one hundred dollars, the man then reached into his black Escalade and pulled out a white rolled up sack or baggie. As Busby handed him the one hundred dollars, he handed over the baggie. As the two parted ways, Deputy Busby noted his license plate out loud on the audio recording. Later, Deputy Busby transferred the baggie and audio recorder to Deputy Dusty Kilgore, another officer who also worked for the Upton County Sheriff's Office.

At trial, Deputy Busby identified the audio recording of the conversation he had made on the evening in question and it was marked for evidence. Deputy Busby testified he had listened to it earlier and he recognized his own voice on the recording. Without objection, the State admitted the recording and played it for the jury. On the recording, Deputy Busby mentioned the man he spoke to had tattoos on his neck and arm. At trial, when asked to identify the man he had spoken to on the night in question, Deputy Busby said he was not able to identify him in the

2

courtroom. The State then asked the court to direct Molina to remove his shirt so that Deputy Busby could confirm the tattoos he had mentioned in the recording and in his testimony. Before the court responded, defense counsel requested an opportunity to ask questions outside the presence of the jury. On voir dire, Deputy Busby stated that he generally recalled seeing tattoos on the man's neck and both arms, but he could not recall what kind they were, what color they were, or how many he had seen on the occasion. He stated that if he saw them during the trial, he could not be sure he could recognize them.

Following the voir dire examination, defense counsel questioned the need for Molina to remove his shirt given that Deputy Busby stated he could not recognize the tattoos he had seen generally. He argued that if the trial court ordered Molina to remove his shirt, Deputy Busby would likely say, "yeah, those are the ones" without actually knowing whether those tattoos actually matched the tattoos of the person arrested for the commission of the offense. The prosecutor responded that the jury should be able to see that Molina fit the general description of a heavyset Hispanic male with tattoos on his neck and arms. Following argument, the trial court directed Molina to show the jury his arms and neck while Deputy Busby was not present, and the State agreed it would not ask Deputy Busby any questions regarding his identification of Molina's tattoos. In the presence of the jury, but while Deputy Busby remained out of the courtroom, the trial court asked Molina to roll up his shirt sleeves to expose his forearms, and to turn down his collar to show tattoos on his neck. Molina complied with the court's instructions. Before Deputy Busby then completed his testimony, the State admitted two photographs which he identified as depicting the white pickup truck he drove and the black Escalade he saw at the scene on the evening at issue.

3

Deputy Kilgore later testified that when he ran the license plate number given by Deputy Busby, the results indicated that the vehicle was registered to a man Deputy Kilgore knew from previous experiences to be Molina's father. Deputy Kilgore also testified that Molina was known to drive a black Escalade, that Molina had previously been stopped by law enforcement while driving the vehicle with the same license plate, and that he listened to the audio recording and recognized Molina's voice on it because he was familiar with it from previous law enforcement interactions with Molina.

Before resting, the State presented testimony from Marissa Gomez, regional laboratory manager of the Texas Department of Public Safety laboratory in Midland, who testified that she analyzed the substance in the baggie and it tested positive for cocaine weighing less than one gram. The jury convicted Molina and assessed two years' imprisonment as punishment.

## DISCUSSION

Molina challenges his conviction in two issues. First, he argues that the trial court erred by compelling Molina to expose his arms and neck during the trial. Second, he contends that the evidence was legally insufficient to prove Molina's identity as the man who sold Deputy Busby cocaine on the evening at issue. We will address Molina's sufficiency challenge first.

### Legal Sufficiency

In a legal sufficiency challenge, we determine whether any rational jury could have found the essential elements of the charged offense beyond a reasonable doubt after viewing the evidence in the light most favorable to the jury's verdict. *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979)). Evidence may be legally insufficient when the record "contains either no evidence

4

of an essential element, merely a modicum of evidence of one element, or if it conclusively establishes a reasonable doubt." *Id*. (citing *Jackson*, 443 U.S. at 320, 99 S.Ct. at 2789). We may not re-weigh evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Further, we presume that the jury resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that determination because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to their testimony. *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

Here, Molina argues that the evidence presented was insufficient to establish his identity to justify a verdict of guilt. Molina contends that only Deputy Kilgore identified Molina's voice on the audio recording. With his testimony, however, he contends that Kilgore failed to testify how long it had been since the last time he had heard Molina's voice before trial. Molina argues the jury had insufficient information to judge the credibility of Deputy Kilgore's testimony. We disagree.

Texas Rule of Evidence 701 allows testimony by lay witnesses when their opinion about a matter is rationally based on perceptions of the witness and the lay opinion is helpful to determine a fact in issue. *See* TEX. R. EVID. 701. Here, Molina's identity as the person who sold narcotics to Deputy Busby was at issue. On the identification of the voice, Deputy Kilgore testified that he listened to the recording, and based on his personal knowledge and familiarity with Molina's voice, he recognized him conversing with Deputy Busby. Kilgore testified he had personal experiences with Molina in roughly fifteen law enforcement encounters including hearing Molina's voice on a recording.

5

We conclude that testimony from Deputy Kilgore met both requirements of admissibility. First, his opinion qualified as being rationally based on his perception from having experienced many encounters with Molina. *See* TEX. R. EVID. 701. And, second, his testimony was helpful to identify the second voice on the recording. *See id*. Moreover, Rule 701 does not require that the proponent of lay witness testimony establish when the witness last heard the voice being identified. *See id*. The State, therefore, was not required to elicit information from Deputy Kilgore about the last time he heard Molina's voice before trial. *See id*. As the fact finder, the jury was free to make a credibility determination regarding Deputy Kilgore's testimony, and to assign whatever weight they chose to his identification of Molina's voice on the recording. *See Merritt*, 368 S.W.3d at 525–26; *Brooks*, 323 S.W.3d at 899.

We disagree with Molina's contention that testimony amounting to a witness's assertion that "I know that voice, I've heard it before," is insufficient evidence to allow a witness to identify a voice on an audio recording. In *McInturf v. State*, 544 S.W.2d 417, 419 (Tex. Crim. App. 1976), the Texas Court of Criminal Appeals held that voice identification constitutes direct evidence. *McInturf* explained, "[v]oices differ and although the divergence between one voice and another may be slight, nevertheless, the person who receives a telephone call many times identifies the voice of the caller the moment it is heard." *Id*. Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence present in the record was sufficient to enable a rational jury to find that Molina was identified as the man who sold cocaine to Deputy Busby beyond a reasonable doubt. *See Britain*, 412 S.W.3d at 520; *McInturf*, 544 S.W.2d at 419 (voice identification is sufficient in and of itself to prove identity).

Molina's second issue is overruled.

6

**Tattoo Issue**

We now turn to whether the trial court erred by directing Molina to expose his arms and neck to allow the jury to observe his tattoos. While the exact nature of Molina's argument is not entirely clear, we construe the argument as being grounded in Texas Rule of Evidence 403, which excludes evidence whose probative value is substantially outweighed by the risk of unfair prejudice. *See* TEX. R. EVID. 403. We also construe his complaint as one asserting that the trial court's actions violated Molina's privacy interests.

We first consider Molina's Rule 403 argument. A trial court's decision to require a defendant to display tattoos on his body in the presence of the jury is reviewed for an abuse of discretion. *See, e.g., Silvestre v. State*, 893 S.W.2d 273, 274 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd). To determine whether the trial court's actions violated Rule 403, we must consider the following factors by weighing: "(1) the inherent probative value of the evidence and (2) the State's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency to confuse or distract the jury from the main issues, (5) any tendency to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or be needlessly cumulative." *Knight v. State*, 457 S.W.3d 192, 204 (Tex. App.—El Paso 2015, pet. ref'd) (quoting *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)).

Here, the probative value of the evidence was high because Deputy Busby testified that the man he met and recorded had tattoos on his neck and arms, which were a distinguishing characteristic relevant to establishing his identity. The State's need for the evidence was also high

7

because Molina's identity was a contested issue at trial. In contrast, the tendency of the evidence to suggest a decision on an improper basis was low because the presence of tattoos is unlikely to inflame the passions of the jury. Likewise, there was little chance that the jury would be confused by the presence of Molina's tattoos, or that the jury would give undue weight to their presence. Finally, the amount of time taken to present the evidence was minimal. As such, we conclude that the trial court did not violate Rule 403 or abuse its discretion by directing Molina to show the jury his tattoos. *See Silvestre*, 893 S.W.2d at 274–75 (trial court did not violate Rule 403 by compelling defendant to display the tattoos on his arms to the jury where defendant's identity was at issue).

We also disagree with Molina's contention that his privacy interests were unreasonably violated when the trial court compelled him to expose his arms and neck to show his tattoos to the jury. Tattoos are no less an identifying marker than the color of a person's eyes, the sound of his voice, or the color of his hair, which are characteristics a defendant can be compelled to disclose to a jury. *Sauceda v. State*, 309 S.W.3d 767, 769 (Tex. App.—Amarillo 2010, pet. ref'd) (panel op.). As such, the trial court did not abuse its discretion when it compelled Molina to show the jury his arms and neck, especially when his identity was at issue in the case, and the trial court's actions did not violate Molina's privacy interests. *See id.*; *see also Silvestre*, 893 S.W.2d at 274.

Molina's first issue is overruled.

## CONCLUSION

We affirm the judgment of the trial court.

GINA M. PALAFOX, Justice

September 12, 2018

8

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)