

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0712-18

**MAURICE LAMAR PIPER, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### DALLAS COUNTY

WALKER, J., filed a concurring opinion.

### CONCURRING OPINION

I agree with the Court's decision to affirm the judgment of the court of appeals because

Appellant failed to rebut the "strong presumption that counsel's conduct fell within the wide range

of reasonable professional assistance." I write separately to highlight that, even when the evidence

supporting an involuntary conduct instruction is incredibly weak and contradicted as it was in this

case, a defendant is nevertheless entitled to such an instruction. Additionally, while I agree with

Appellant's contention that the manslaughter instruction was objectionable, if counsel intentionally allowed it to remain in the jury charge, such action was not deficient performance because the error was in Appellant's favor.

### I — The Involuntary Conduct Instruction

I begin with Appellant's claim that counsel failed to seek an instruction on involuntary conduct. In order to establish the claim that trial counsel's performance was deficient for failing to request the instruction, Appellant must show that he was entitled to the instruction. *Cardenas v. State*, 30 S.W.3d 384, 392 (Tex. Crim. App. 2000).

The majority finds that the issue of voluntary conduct was raised by Appellant's testimony that the gun accidentally fired when Hawkins grabbed him.[1] I agree. A defendant is entitled to an instruction on every defensive issue raised by the evidence. *Hayes v. State*, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987). This is so regardless of whether the evidence supporting the defensive issue is strong or weak, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the evidence. *Id.* Even a defendant's testimony alone is sufficient to raise a defensive issue requiring an instruction. *Id.*

While I agree that Appellant's testimony that he accidentally fired the gun when he was grabbed from behind was enough to raise the involuntariness issue, the evidence is emblematic of the type of "weak" and "contradicted" evidence that can support a defensive issue, for the following reasons.

Appellant pointed a loaded .38 revolver at Wilson.[2] I feel that it is reasonable to assume, for

---

[1] Majority op. at 7.

[2] Rep. R. vol. 5, 81.

the purposes of this concurring opinion, that the .38 caliber revolver was a double-action revolver because of the fact that a single-action revolver cannot be fired without first manually cocking the hammer, and neither Appellant nor any other witnesses testified that Appellant cocked the hammer before the revolver was fired. Although the State was unable to get Appellant to admit to how much force was necessary to pull the trigger,[3] a double-action revolver requires much more force in order to pull the trigger than a typical, single-action semi-automatic pistol, and firing a double-action revolver therefore requires more deliberate action than a single-action semi-automatic pistol. With single-action semi-automatic pistols, the pistol's hammer is already cocked and a pull of the trigger performs a single action: it releases the hammer (hence the term "single-action"). After firing, the hammer is automatically recocked (hence the term "automatic"), and the gun is ready to fire again. In contrast, with double-action revolvers, the hammer is not already cocked, and a pull of the trigger performs two actions (hence, "double-action"). The trigger pull first cocks the hammer and then releases the hammer. Because the trigger pull must do two things, and the cocking of the hammer is also working against the hammer's spring, pulling the trigger on a double-action revolver requires considerably more force than a single-action semi-automatic pistol.[4] As a result, it is almost

---

[3] *Id.* at 93.

[4] Not all semi-automatic pistols are single-action. While nearly all semi-automatics were once of the single-action type (for example, the Colt M1911), many modern designs (such as the Beretta 92) are double-action/single-action ("DA/SA"). These DA/SA semi-automatics combine the heavy trigger pull of a revolver for the first shot with the automatic hammer-cocking of a semi-automatic, providing additional safety against unintentional discharges with an easy-to-fire single-action trigger for follow-up shots.

The safety benefits of DA/SA semi-automatics were explained by firearms instructor Todd Green, that because of:

a trigger pull that is both longer and heavier than in most other actions, there is far

impossible to accidentally or involuntarily fire a fully-functioning double-action revolver unless the hammer is in the cocked position.[5]

This last point I cannot emphasize enough, and I will repeat it: it is almost impossible to accidentally or involuntarily fire a fully-functioning double-action revolver *unless the hammer is in the cocked position*. Any person who is proficient with a revolver understands that there is a world of difference between how easily a revolver's trigger can be pulled when the hammer is cocked as opposed to when the hammer is not cocked. When the hammer is cocked, very little effort is required to pull the trigger. A person holding a revolver, with the hammer cocked and his finger on the trigger or in the trigger guard, very well could inadvertently, "accidentally," or involuntarily fire the revolver.

In this case, however, there was no evidence that the revolver's hammer was cocked. Because there was no evidence that the revolver was defective or that the hammer was cocked, the evidence that Appellant fired the revolver leads to the conclusion that he deliberately and voluntarily pulled the trigger. Thus, the physical reality of the gun itself strongly militates against any claim that it was accidentally or involuntarily fired. The only evidence that Appellant was entitled to an

---

more tactile feedback that the trigger is being pulled in between the start of inadvertent unintentional movement and the Big Loud Noise . . . The shooting community always blames the operator for every accident and never considers the role that equipment plays in making some guns more or less likely to *facilitate* those accidents.

Todd Louis Green (ToddG), *General Thoughts on DA/SA Pistols*, PISTOL-FORUM.COM (May 22, 2012, 11:20 PM), https://pistol-forum.com/showthread.php?4212-General-Thoughts-on-DA-SA-Pistols.

[5] As with DA/SA semi-automatics, the longer and heavier trigger pull with far more tactile feedback, *see id.*, makes it very unlikely that a double-action revolver can be inadvertently fired.

involuntariness instruction was his own testimony that the gun accidentally fired. Even though this evidence was both "weak" and "contradicted," Appellant was entitled to an involuntary conduct instruction.

Yet, as the majority emphasizes, there is a strong presumption that counsel provided professional assistance. Counsel could have chosen not to seek an involuntary conduct instruction *because* Appellant's testimony that his revolver accidentally fired was weak and contradicted. It would not have been unreasonable for counsel to believe that a Texas jury would have a number of members who were familiar enough with revolvers that any claim of "accident" would cause an enormous amount of not only skepticism, but outright pushback from the jury. Very little imagination is required to hear the voices of the jurors who know their way around a gun: "this is hogwash," "they must be taking us for fools." Putting forth the issue of "accident" to the jury could have done more harm than good. I believe that, absent record evidence to the contrary, by not putting forth a weak and contradicted defensive theory and therefore not antagonizing the jury, counsel was justified in not requesting an instruction on involuntary conduct.

## II — The Manslaughter Charge

Appellant also argues that counsel should have objected to the inclusion of manslaughter in the jury charge. While I agree that manslaughter should not have been included in the charge, the error was to his benefit. The State should have objected, not Appellant's trial counsel.

Regarding whether manslaughter should have been in the charge at all, unlike the majority's conclusion that Appellant's pointing his gun at Wilson was a reckless act[6] and Presiding Judge

---

[6] Majority op. at 7.

Keller's conclusion that the evidence raises manslaughter,[7] I believe the evidence that Appellant pointed his revolver at Wilson and then fired his revolver at Wilson, without evidence that the revolver's hammer was cocked, does not show the recklessness required to support manslaughter. It shows intentional and knowing conduct and thus murder.

Under § 19.04 of the Penal Code, a person commits the offense of manslaughter if he recklessly causes the death of an individual. TEX. PENAL CODE Ann. § 19.04. "A person acts recklessly, or is reckless, with respect to the circumstances surrounding his conduct or to the result of his conduct if he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 6.03(c). "The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.*

Manslaughter is, as the majority explains, a result of conduct offense.[8] Recklessness, therefore, must be tied to the result of the actor's conduct, which is, for manslaughter, the death of an individual.

Obviously, in this case an individual—Wilson—died. And there is no contention that Appellant did not cause Wilson's death. What is lacking is the recklessness. In this case, there was no evidence that Appellant was aware of but consciously disregarded a risk that someone would be killed. Instead, the evidence showed that Appellant believed he was walking into a dangerous situation, and he brought a loaded revolver for protection. He must have known that the revolver was loaded, because an empty revolver would be ineffective for protection in an unsafe situation. He

---

[7] Concurring op. of Keller, P.J., at 6.

[8] Majority op. at 7 (citing *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013)).

voluntarily got into a heated confrontation with Wilson. He voluntarily pointed the revolver at Wilson, who was unarmed, and held him at gunpoint. And as explained above, absent any indication that the hammer of the revolver was cocked, it would be virtually impossible for the double-action revolver to fire accidentally because someone grabbed the actor from behind. I am confident that Appellant voluntarily and deliberately pulled the trigger and shot Wilson. The act of pointing a loaded gun at someone and shooting it toward that person at close range demonstrates an intent to kill. *Ex parte Thompson*, 179 S.W.3d 549, 556 n.18 (Tex. Crim. App. 2005). Without evidence that the hammer was cocked or that the revolver was defective, there was no evidence that Appellant was acting merely recklessly.

Therefore, the addition of manslaughter in the charge as a lesser included offense was objectionable. However, based on the weight of the evidence, I am confident that Appellant's trial counsel correctly decided not to object. I am surprised that the State did not object. The inclusion of the lesser offense of manslaughter actually worked out in Appellant's favor by giving the jury a middle option between convicting Appellant of murder or acquitting him and setting him free. If the manslaughter option was taken away from the jury and the case was submitted on an all-or-nothing basis, given the weight of the evidence, Appellant likely would have been convicted of murder, which is a first-degree felony with a punishment range of 5 to 99 years or life,[9] and which is ineligible for community supervision.[10] Manslaughter, on the other hand, is a second-degree felony

---

[9] Tex. Penal Code Ann. §§ 19.02(c), 12.32(a).

[10] Tex. Code Crim. Proc. Ann. arts. 42A.054(a)(2), 42A.056(3).

with a punishment range of 2 to 20 years[11] and can be eligible for community supervision.[12] If anything, the inclusion of the manslaughter charge was a windfall to Appellant, and, in my opinion, trial counsel's decision not to object to the manslaughter instruction constituted *effective assistance*.

### III — Conclusion

In conclusion, I agree with the Court that Appellant failed to meet his burden to show ineffective assistance of counsel. Without record evidence showing that counsel was actually motivated by bad reasons for choosing not to object, counsel's "failures" appear to be an objectively sound decisions. I agree with the Court's decision to affirm the judgment of the court of appeals.

Filed: September 11, 2019
Do Not Publish

---

[11] TEX. PENAL CODE ANN. §§ 19.04(b), 12.33(a).

[12] TEX. CODE CRIM. PROC. Ann. art. 42A.055.