

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00098-CR

_____

CANDACE BELL, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from County Criminal Court No. 1
Denton County, Texas
Trial Court No. CR-2020-01494-A

---

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Opinion by Chief Justice Sudderth

# OPINION

## I. Background

In two points, Appellant Candace Bell appeals her conviction and 180-day sentence for violation of a protective order. *See* Tex. Penal Code Ann. § 25.07(a)(3)(B) (providing that a person commits an offense if, in violation of an order issued under Chapter 85 of the Family Code, the person knowingly or intentionally goes to a child-care facility where a child protected by the order attends).

The facts are quite simple. It is undisputed that on October 4, 2019—in violation of a protective order that prohibited Bell from "going to or near" and "within 1000 yards of" Hebron Montessori School, the child-care facility that her son (Son) attended—Bell went to see Son at Hebron. After Bell left, Hebron's director reported Bell's presence to Son's father, James Hawkins. Hawkins immediately called the police and drove to the school. A police officer arrived at Hebron shortly thereafter, made a report, and obtained a warrant for Bell's arrest. Bell was later arrested.

Bell was charged with knowingly violating the protective order. *See id.* A jury convicted her and assessed her punishment at 180 days in jail.

In her first point on appeal, Bell complains of the trial court's refusal to include an instruction in the court's charge regarding a clerk's duty under Texas Family Code Section 85.042(b) to deliver a copy of a protective order to the affected child-care

2

facility.[1]  In her second point, Bell argues that there was insufficient evidence to support a finding of guilt against her.  We affirm.

## II.  Analysis

### A.  Point One:  Refusal of Bell's Requested Jury Instruction

In her first point, Bell argues that the trial court should have instructed the jury that "[o]ur law provides that if a protective order made under Chapter 85 of the Family Code prohibits the Defendant from going to or near a childcare facility or school, the clerk of the Court shall send a copy of the order to the childcare facility or school."

At trial, after Bell's attorney requested this charge instruction, the trial court refused the request, stating, "I'm going to deny that request . . . .  I do not believe that that's an element of the offense."  While Bell's attorney agreed that the content of the requested instruction did not represent an element of the offense, he nevertheless urged the trial court to provide it as "an explanation of the law that is used to obtain a conviction under Chapter 85 of the Family Code . . . . [i.e.,] an instruction to the jury explaining the law to them."  The trial court again denied the request and refused to include the requested instruction in the court's charge.

---

[1]Both sides agree that Hebron did not receive a copy of the protective order from the clerk of the court.  But it is also undisputed that Hawkins had provided a copy of the protective order to Hebron, that Hebron was aware of the protective order, and that a copy of the protective order was kept in Son's file at Hebron.

3

Bell is correct that because this protective order prohibited Bell from going to or near Hebron, the clerk of the court was required under Family Code Section 85.042(b) to send a copy of the protective order to Hebron. Tex. Fam. Code Ann. § 85.042(b) (providing that "[i]f a protective order made under this chapter prohibits a respondent from going to or near a child-care facility or school, the clerk of the court shall send a copy of the order to the child-care facility or school"). And it is undisputed that the clerk failed to carry out its obligation to do so.

Article 36.14 of the Texas Code of Criminal Procedure required the trial court here to instruct the jury in writing as to "the law applicable to the case" without "expressing any opinion as to the weight of the evidence, . . . summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." Tex. Code Crim. Proc. Ann. art. 36.14.[2] But Bell's requested instruction regarding the clerk's duty to send the protective order to Hebron had no place in this charge; it was not applicable to the

[2]The trial court was further obligated to include statutory defenses, affirmative defenses, and justifications in the court's charge if they were raised by the evidence. *See Walters v. State*, 247 S.W.3d 204, 212, 208–09 (Tex. Crim. App. 2007). But the clerk's failure to send a copy of the protective order to Hebron is neither a statutory defense nor an affirmative defense as those terms are statutorily defined. *See* Tex. Penal Code Ann. § 2.03 (providing that "[a] defense to prosecution for an offense in [the Penal Code] is so labeled by the phrase: 'It is a defense to prosecution . . . .'"), § 2.04 (similarly providing that "[a]n affirmative defense in [the Penal Code] is so labeled by the phrase: 'It is an affirmative defense to prosecution . . . .'"). Nor is such failure a justification for violation of a protective order, and Bell makes no claim that it is.

case here because it would not have assisted the jury in identifying the elements of the offense that the State was required to prove, nor would it have identified a defense, an affirmative defense, or a justification for the jury to consider. *See* Tex. Penal Code Ann. § 25.07. Indeed, had the trial court included the requested instruction in the charge, the court would have run the risk of commenting on the weight of the evidence, *see Bartlett v. State*, 270 S.W.3d 147, 152 (Tex. Crim. App. 2008) ("Even a seemingly neutral instruction may constitute an impermissible comment on the weight of the evidence because such an instruction singles out that particular piece of evidence for special attention."), which it is expressly forbidden to do.

The trial court did not err by refusing Bell's requested instruction. We overrule Bell's first point.

## B.  Point Two:  Sufficiency of the Evidence

In her second point, Bell complains that there was insufficient evidence to support a finding of guilt against her. The record demonstrates otherwise.

In an evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a

5

hypothetically correct jury charge to the evidence adduced at trial. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914.

The law as authorized by the indictment means the statutory elements of the offense as modified by the charging instrument's allegations. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021); *see Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements."). "Under this standard, evidence may be legally insufficient when the record contains either no evidence of an essential element, merely a modicum of evidence of one element, or if it conclusively establishes a reasonable doubt." *Queeman*, 520 S.W.3d at 622 (quoting *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013)).

When a sufficiency issue turns on the meaning of the statute under which the defendant was prosecuted, we review the statutory construction issue de novo. *Flores v. State*, 620 S.W.3d 154, 158 (Tex. Crim. App. 2021); *Liverman v. State*, 470 S.W.3d

6

831, 836 (Tex. Crim. App. 2015); *see Prichard v. State*, 533 S.W.3d 315, 319–20 (Tex. Crim. App. 2017) (reciting principles of statutory construction). "In those situations, after viewing the evidence in the light most favorable to the verdict, we ask if certain conduct actually constitutes an offense under the statute" as construed. *Flores*, 620 S.W.3d at 158; *see Timmins v. State*, 601 S.W.3d 345, 347–48 (Tex. Crim. App. 2020).

"[W]ords not specially defined by the Legislature are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance." *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992); *see Green v. State*, 476 S.W.3d 440, 445–47 (Tex. Crim. App. 2015) (quoting *Vernon*). "Accordingly, when determining the sufficiency of evidence to support a jury verdict, reviewing courts must not employ definitions of relevant statutory words which are different or more restrictive than the jurors themselves were legally entitled to use." *Vernon*, 841 S.W.2d at 409.

Section 25.07 of the Texas Penal Code provides that a person commits an offense if, in violation of an order issued under Chapter 85 of the Texas Family Code,[3] she knowingly or intentionally goes to or near a child-care facility, as specifically described in the order, where a child protected by the order attends. Tex. Penal Code Ann. § 25.07(a)(3)(B). Thus, applying this statute, a hypothetically correct charge would have required the State to prove beyond a reasonable doubt that Son

---

[3]Both sides agree that the protective order in this case was issued under Chapter 85 of the Family Code.

was "a child protected by the order."[4]  *Id.*  Bell argues that because the protective

order named only James as the protected person,[5] there is no evidence that Son was a

person protected by the order.

Without question, Bell violated the terms of the protective order.  The order

prohibited Bell from

> going to or near the residences, child-care facilities, or schools [Son] normally attends or in which [Son] normally resides.  Specifically, [Bell] is prohibited from going within 1000 yards of the following locations:
>
> • Hebron Montessori School : 1938 E. Hebron Pkwy Carrollton, TX 75007.[6]

---

[4]The complaint filed against Bell charged her with "intentionally or knowingly going to or near the school/daycare of [Son], *a member of the family or household or protected individual* described in the protective order, namely: within 1000 yards of HEBRON MONTESSORI SCHOOL."  [Emphasis added.]  A hypothetically correct charge would not have included the phrase "a member of the family or household" because that language does not appear in the statute and therefore does not accurately set out the law.  *See* Tex. Penal Code Ann. § 25.07(3)(B) (prohibiting going to or near "any child care facility, residence, or school where a child protected by the order or condition of bond normally resides or attends"); *see also* Tex. Fam. Code Ann. § 85.022(b)(4) (likewise not including the phrase "a member of the family or household" in permitting a court, in a protective order, to prohibit a person found to have committed family violence from "going to or near the residence, child-care facility, or school a child protected under the order normally attends or in which the child normally resides").  Bell did not challenge the complaint in the trial court or on appeal.

[5]The protective order provides that "[i]n this order, 'Protected Person' means Applicant."  "Applicant" was identified as James Hawkins.

[6]Specifically naming the prohibited child-care facility or school and providing for a minimum distance from that facility or school is mandated by Family Code Section 85.022(c) for protective orders that "prohibit the person found to have committed family violence from . . . going to or near the residence, child-care facility,

And it is undisputed that she went there.

Bell's violation of the protective order was certainly punishable by contempt. *See* Tex. Fam. Code Ann. § 85.026(a) (requiring a Chapter 85 protective order to contain a "prominently displayed statement[] in boldfaced type, capital letters, or underlined: 'A PERSON WHO VIOLATES THIS ORDER MAY BE PUNISHED FOR CONTEMPT OF COURT'"). But the question here is whether Bell's violation of the protective order also rose to the level of a criminal act. And the answer to that question hinges upon whether Son was, as the Penal Code requires to criminalize Bell's act of contempt, "a child protected by the order." Tex. Penal Code Ann. § 25.07(a)(3)(B).

On appeal, the State points out that "within different subsections" of Section 25.07, the statute "uses language to refer to both a 'protected individual' and a 'member of the family or household'" in criminalizing the violation of a protective order. Indeed, not only does the Penal Code use these two phrases, but the Family Code also uses other phrases, including "child protected by the order," in setting forth the rules and restrictions related to Chapter 85 protective orders. In examining both Codes, we note that

---

or school a child protected under the order normally attends." Tex. Fam. Code Ann. § 85.022(b)(4).

9

- Section 85.001 employs both the phrases "the person protected by the order" and "member of the family or household of the person protected by the order,"[7] Tex. Fam. Code Ann. § 85.001(b)(2);

- Section 85.007(a) identifies not only "a person protected by an order" and "member of the family or household of a person protected by an order," *id.* § 85.007(a), but also "a child protected by the order,"[8] *id.* § 85.007(a)(3);

- Likewise, Section 85.022(b) refers to "a person protected by an order," "a member of the family or household of a person protected by an order," and "a child protected under the order,"[9] *id.* § 85.022(b)(2)–(7); and

---

[7]Family Code Section 85.001(b)(2) authorizes a court to issue a protective order applicable to both parties that is "in the best interest of the person protected by the order or [a] member of the family or household of the person protected by the order." *Id.* § 85.001(b)(2).

[8]Family Code Section 85.007(a) permits the court to exclude from the protective order the address and telephone number of certain individuals. *Id.* § 85.007(a)(1)–(2) (referring to "a person protected by the order"), § 85.007(a)(3) (referring to "a child protected by the order").

[9]Family Code Section 85.022(b) empowers the court to prohibit certain communications and conduct that are harassing or threatening; that are reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass or harm; or that harms, threatens, or interferes with a pet or a companion or assistance animal. *Id.* § 85.022(b)(2)(A)–(C) (referring to "a person protected by an order or a member of the family or household of a person protected by an order"), § 85.022(b)(3) (also referring to "a person protected by an order or a member of the family or household of a person protected by an order"), § 85.022(b)(4) (referring to "a child protected under the order"), § 85.022(b)(5), (7) (again referring to "a person protected by an order" and "a member of the family or household of a person protected by an order").

10

- Penal Code 25.07(a) not only uses the phrases "member of the family or household" and "a child protected by the order," but also introduces another descriptive phrase—"a protected individual,"[10] Tex. Penal Code Ann. § 25.07(a)(2).

So, throughout the Family Code and the Penal Code, in various contexts, the Legislature has differentiated between (1) the person protected by the order, (2) members of the family or household of a person protected by the order, (3) a child protected by the order, and (4) a protected individual.

We start with the presumption that the Legislature made deliberate use of these four phrases and that they have distinct meanings. *See O'Brien v. State*, 544 S.W.3d 376, 384 (Tex. Crim. App. 2018) ("We presume that every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible."); *Wagner v. State*, 539 S.W.3d 298, 306 (Tex. Crim. App. 2018) (similar). As these phrases apply to the protective order here, the order clearly identified James as the person protected by the order by stating, "In this order, 'Protected Person' means Applicant."

---

[10]Penal Code Section 25.07(a) criminalizes certain violations of protective orders issued under Chapter 85 of the Family Code. Tex. Penal Code Ann. § 25.07(a)(2)(A)–(C) (referring to "a protected individual or a member of the family or household"), § 25.07(a)(3)(A) (also referring to "a protected individual or a member of the family or household"), § 25.07(a)(3)(B) (referring to "a child protected by the order"), § 25.07(a)(5) (referring to "a person protected by the order").

Bell argues that because Son was not specifically named as a "protected person," Son was not a "child protected by the order." However, Bell's construction ignores the trial court's finding in the protective order that the order was "for the safety and welfare and in the best interest of [James] *and other members of the family*." [Emphasis added.] Because indisputably Son is a member of the family of both James and Bell, the order purports to protect the safety and welfare of not only James but also of Son as well.[11]

Bell asks us to define "a child protected by the order" more restrictively than ordinary usage allows. This we cannot do. *See Green*, 476 S.W.3d at 445; *Vernon*, 841 S.W.2d at 409. Under a plain reading of Penal Code Section 25.07(a)(3)(B), Son is "a child protected by the order."[12] Tex. Penal Code Ann. § 25.07(a)(3)(B).

This statutory construction makes sense because even though James was identified as the "protected person" in the protective order, the order also worked to protect Son from witnessing or being caught in the crossfire of an altercation between his parents. Indeed, James testified that while he was not concerned about Bell's engaging in violent behavior toward Son, James sought the protective order because

---

[11]It is undisputed that Son is a child.

[12]We employ a plain reading of the statute because the term "child protected" is not defined within Penal Code Section 25 or Family Code Chapter 71, which defines "member of a household." *See generally id.* § 25.07(b)(1) (stating that "member of a household" has the meanings assigned by Family Code Chapter 71).

Bell had harassed and assaulted James on numerous occasions in the past and because he was concerned that she might do so again in front of Son.

And while Son was not specifically named as a "child protected by the order," because the order stated that the court had found that "the following protective orders [were] for the safety and welfare and the best interest of [James] and other members of the family," on its face, the order sought to protect the safety and welfare of Son. Son was a child protected by the order, and the evidence is sufficient to support Bell's conviction for violating the protective order. We overrule Bell's second point.[13]

### III. Conclusion

Having overruled both of Bell's points, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Publish
Tex. R. App. P. 47.2(b), 47.4(a)

Delivered: November 23, 2022

---

[13]To the extent that Bell raised additional points in her supplemental brief that were not raised in her initial brief, we decline to consider them. *See Jones v. State*, No. 03-19-00797-CR, 2021 WL 3919391, at *17 (Tex. App.—Austin, Sept. 2, 2021, pet. ref'd) (mem. op., not designated for publication) (stating that appellate court has discretion to consider new issues raised in a supplemental brief).